No. 34,702

THE BOARD OF TRUSTEES OF KANSAS ANNUAL CONFERENCE OF THE CHURCH OF THE UNITED BRETHREN IN CHRIST, *Appellant*, v. THE MOUNT CARMEL COMMUNITY CEMETERY ASSOCIATION, JOE WIERENGA, ALZY SIPE, FRED KUIKEN, GEORGE K. NOON and JOHN E. COUNTRYMAN, *Appellees*.

(103 P. 2d 877)

Opinion filed July 6, 1940.

*R. C. Postlethwaite*, of Mankato, for the appellant.
*Manford Holly*, of Mankato, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This appeal is to test the propriety of the trial court's ruling on defendants' demurrer to plaintiff's petition in an action to determine the title to a small parcel of cemetery ground in

Jewell county and which also contains the remnant of a church building no longer used for religious or any other purposes.

The plaintiff's petition alleged that the United Brethren Church is an ecclesiastic organization which had its origin about 1800 A. D. in a union of many religious bodies; that its affairs are governed by certain church laws and disciplinary regulations; that it has a supreme governing body designated as its general conference which has authority to elect bishops and to change and amend its laws; that subordinate to the general conference are various state conferences, one of which is the Kansas conference which was created about 1853 A. D. The latter conference caused the plaintiff to be incorporated as its "Board of Trustees of the Church of the United Brethren in Christ," and vested in it the power to manage, control, sell and convey its properties, including abandoned church properties.

Plaintiff's petition also alleged that the governing body of the church, to wit, the Kansas conference, has promulgated a book of discipline which constitutes its church law. In its Book of Discipline, Part I, Article IV, page 18, it is provided:

"The right, title, interest and claim of all property, both real and personal, of whatever name or description, obtained by purchase or otherwise, by any person or persons, for the use, benefit and behoof of the Church of the United Brethren in Christ, are hereby fully recognized, and held to vest in the church aforesaid."

Other provisions from the plaintiff's book of discipline set out in plaintiff's petition read:

"In no case shall a church house and its premises be sold without the consent of the annual conference, within whose bounds it is located, where such sale would result in the disbanding of a class.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Title to all property of local congregations shall be held subject to the provisions as hereinbefore stated, whether title to the same is taken in the name of the church trustees or in the name of a local corporation organized for that purpose or otherwise.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"That whenever a church house shall be declared to be abandoned property by the annual conference, it shall authorize the conference trustees . . . to lease, rent or sell such property as it may deem advisable, in accordance with the laws of the state in which the property is situated."

Plaintiff's petition further alleges that in 1885 A. D. an unincorporated church society was organized in Erving township, Jewell county, which has since been known as the Mount Carmel United Brethren Church. It has always been conducted in accordance with

the discipline of the parent organization, and for many years was affiliated therewith under the supervision and control of the Kansas conference. Its successive pastors were appointed by bishops holding authority conferred by it.

In 1885 John and Sarah Anderson conveyed by general warranty deed to "the trustees of the United Brethren Church of Erving township" a two-acre tract of land in the southwest quarter of section 12, township 5 south, range 10 west. On this tract the local church edifice was erected, and part of the tract was set apart for a cemetery. The church building has fallen into disrepair and now has only a salvage value, but the cemetery is still in use. Plaintiff further alleges that without authority from the plaintiff trustees or other lawful authority whatsoever, certain persons, defendants herein (and one now deceased), purporting to act as "trustees of the United Brethren Church of Erving township," did on July 27, 1934, execute a quitclaim deed to this two-acre tract to one Sylvia Rose as trustee, which quitclaim deed recited that it was conveyed to the grantee—

"In trust nevertheless for the following purposes: to hold as trustee, the title to the above-described real property for existing cemetery purposes and to retain title in the future for such purposes for the period of her life and until her successor is designated by the district court of Jewell county, Kansas, or until the incorporation of a cemetery association under the laws of Kansas, at which time the trustee herein named or her successor or successors will cause title to said real property to be conveyed to such cemetery association for cemetery purposes as provided by law."

About 1932, owing to the deaths of many of the members of the Mount Carmel Church, its few surviving members were unable to finance its activities, and thereafter its activities were conducted irregularly and eventually ceased altogether.

On September 24, 1934, the Mount Carmel Community Cemetery Association was incorporated, and on October 5, 1934, Sylvia Rose, as trustee, executed to it a quitclaim deed to the two-acre tract in controversy; and pursuant thereto her grantee, the defendant cemetery association, had taken possession of the property and claimed the ownership thereof.

Plaintiff further alleged—

"That plaintiff is informed and therefore states that no action was ever taken by the official board of said charge for the purpose of abandoning its organization, nor was any authority given to its board of directors to make any disposition of its church property; that said charge made no request of,

nor did it at any time obtain from the annual Kansas conference of the United Brethren Church its permission to sell or otherwise dispose of the Mount Carmel Church property above described."

It was further alleged that the quitclaim deed to Sylvia Rose as trustee and the quitclaim deed from her to the defendant cemetery association, were clouds upon plaintiff's title, and plaintiff prayed for a declaration of its rights, for cancellation of the quitclaim deeds and for judgment quieting its title to the property *except. so much thereof—*

"As the individual defendants named herein or others owning lots located in the portion thereof used for burial purposes may have for such use."

Defendants' demurrer to plaintiff's petition summarized as above was sustained. Hence this appeal.

At the outset counsel for appellees raise the point that this action does not fall within the category of cases in which a declaratory judgment may be sought or granted. The point may be conceded, but a declaratory judgment was only one object of this litigation. Plaintiff asked for other equitable relief, for cancellation of the quitclaim deeds, and to quiet its title to so much of the property as is not actually set apart for a cemetery and so used. Moreover, it is settled law in this jurisdiction that if a justiciable cause of action is stated in plaintiff's petition, it is not always very important what is prayed for. In *Eagan v. Murray*, 102 Kan. 193, 170 Pac. 389, it was said:

"The prayer of a petition is merely the pleader's idea of the relief to which he is entitled; it is not a part of the statement of the cause of action; and if the cause of action is sufficiently stated and sufficiently proved, the court will adjudge and decree the proper legal redress, which may or may not conform in whole or in part to the relief prayed for by the pleader." (Syl. ¶ 2.)

In *Estey v. Southwestern Gas Co.*, 129 Kan. 573, 283 Pac. 628, it was said:

"The prayer of the petition does not necessarily determine the nature of the action nor limit the relief that may be granted. The allegations of the petition determine the nature of the action brought rather than the prayer for relief. (*Wellington v. Insurance Co.*, 112 Kan. 687, 212 Pac. 892.)" (Syl. ¶ 2.)

Looking into plaintiff's petition it is difficult to discover in what respects it fails to state a cause of action. Against defendants' demurrer all its material allegations must be taken as true. For half a century the Mount Carmel Church body has been an affiliate and subordinate part of the parent organization whose corporate busi-

ness agent is the plaintiff in this action. The law books are laden with juristic dissertations on the structure of church organizations and the binding potency of their fundamental rules and ordinances which constitute their church law. In the historic case of *Watson v. Jones*, 80 U. S. (13 Wallace) 679, which grew out of the disruption of the Presbyterian Church caused by the Civil War, a pertinent paragraph of the syllabus reads:

"In such cases where the right of [church] property in the civil court is dependent on the question of doctrine, discipline, ecclesiastical law, rule, or custom, or church government, . . . the civil court will accept that decision as conclusive, and be governed by it in its application to the case before it." (Syl. ¶ 10.)

Another notable case of half a century ago was *Lamb et al. v. Cain et al.*, 129 Ind. 486, 29 N. E. 20, 14 L. R. A. 526. Two groups of church members of the same religious denomination as the one of present concern, the "Radicals" and the "Liberals," had disagreed about the binding force of an amended constitution supposedly adopted in 1889. The right of dominion and control of certain church property was drawn in question. Plaintiffs claimed under authority of the annual and quadrennial conferences of the church, on the assumption that the amended constitution of 1889 had been regularly adopted. Defendants resisted, raising various issues, but on the point that the parent organization had the dominion and control of the church property, the Indiana court held in favor of plaintiffs, citing *Watson v. Jones*, supra.

Other helpful although not entirely analogous cases we have examined are *Brown v. Clark*, 102 Tex. 323, 116 S. W. 360, 24 L. R. A., n. s., 670; *Franke et al. v. Mann et al.*, 106 Wis. 118, 132, 134, 81 N. W. 1014.

In *Venable v. Baptist Church*, 25 Kan. 177, where title to church property became the subject of litigation between opposing groups of church members, we held:

"The rules and regulations of a church are, so far as church matters are concerned, a part of the law governing the members of such church, unless such rules and regulations are clearly illegal." (Syl. ¶ 3.)

In the opinion it was said:

"The plaintiffs in error claim, as a third point, that the court below substituted the rules and regulations of the Baptist church for the statutes of Kansas relating to trusts and conveyances. Now the court below did not do any such thing. . . . The plaintiffs in error really claim to control the property as the trustees of the First Colored Baptist church. But that church

has also ceased to exist, and its trustees have been superseded by others. That church has been merged in the Ebenezer Baptist church, and all the property that belonged to the former church now belongs to the latter; and all this follows in exact accordance with the rules and regulations of the Baptist denomination, to which all the parties belong. The rules and regulations of a church are, so far as church matters are concerned, a part of the law governing the members of such church. A person who voluntarily joins a church, and tacitly at least agrees to be bound by all the rules and regulations of such church, cannot afterward be allowed to wholly ignore and disregard such rules and regulations. As to all matters pertaining to the church, he is clearly bound by the rules and regulations of the church, unless the same are clearly illegal." (p. 181.)

And so here, when the members of the Mount Carmel local church affiliated with the parent organization and continued their fellowship therewith for half a century they—

"Tacitly, at least, [agreed] to be bound by all the rules and regulations of such church, [and] cannot afterward be allowed to wholly ignore and disregard such rules and regulations. As to all matters pertaining to the church, [they are] clearly bound by the rules and regulations of the church, unless the same are clearly illegal."

Under our state constitution, the title to property of religious corporations is vested in the trustees. (Kan. Const., art. 12, § 3.) What trustees? The body of trustees representing the religious corporation, undoubtedly. The only religious corporation concerned in this action is the parent organization, the Kansas conference of the Church of the United Brethren in Christ. The plaintiff is the incorporated business agent of that organization. For half a century the local church body of Mount Carmel neither claimed nor exercised an independent status, but throughout that long period conformed to the rules, practices and church discipline of the parent organization. The bishop chosen by the Kansas conference supervised the affairs of the local body and named its pastors. The local body made its reports to the parent organization and regularly paid its dues and assessments to it. It is needless to elaborate on these incidents. Their potency cannot be withstood by a demurrer.

Counsel for appellees quote 54 C. J. 67, where the rule is stated that although the canons of a church require the consent of a superior church judicatory to the disposition of church property, those canons do not apply where they are not in accord with a pertinent statute. Sound legal doctrine, of course, but here no such conflicting statute exists. Those cited by counsel for defendants (G. S. 1935, 17-1703 and 17-1704) deal with property of fraternal

lodges. G. S. 1935, 17-1711, 17-1714, 17-1716a, deal with the property of extinct churches of the Baptist, Christian, and Congregational churches, respectively, but have no bearing on the instant case further than to show that the legislature's general attitude accords with the contentions of plaintiff in this action. So, too, is the legislative attitude as announced in a local statute enacted at its last session (Laws 1939, ch. 159), the title to which is a clear index of its general tenor. That title reads:

"An Act relating to the vesting of title to abandoned property belonging to religious organizations known as the church of the United Brethren in Christ, or to any religious society of any such organization, in the trustees of the Kansas annual conference of such church of the United Brethren in Christ, prescribing the procedure to establish the title in the said trustees of said Kansas annual conference to such property, and authorizing the disposition thereof by such conference."

There may be a question whether this statute could be given any retroactive application, so as to govern this controversy, if it declared a different rule of law than the one we are inclined to follow, as stated in *Watson v. Jones*, supra, although it would be a curious doctrine to hold that the legislature as a mere rule of public policy for the prevention of strife could not dispose of *abandoned* property, church property or any other. That question, however, would take us into a line of inquiry we have no present need to pursue. Happily church controversies have not been provocative of much litigation in this jurisdiction. To elaborate on the general theme of ecclesiastical law would be supererogatory. (See the excellent article on "Religious Societies" in 54 C. J. 7-103.)

This court holds that plaintiff's petition stated a cause of action. The judgment is reversed and the cause remanded to the district court with instructions to set aside its ruling on defendants' demurrer and for further proceedings consistent therewith.