No. 36,034

The Williamstown Baptist Church, *Appellee*, v. Mrs. Ruth Henley, The Assembly of God, and The Williamstown Ladies Aid, *Appellants*.

(148 P. 2d 269)

Opinion filed April 8, 1944.

*George K. Melvin* and *Maxine B. Virtue*, both of Lawrence, argued the cause for the appellants.

*A. C. Wilson*, of Oskaloosa, argued the cause for the appellee.

The opinion of the court was delivered by

HOCH, J.: This litigation arose out of a disagreement between an incorporated church organization and a Ladies Aid association over ownership and use of a church building. In an action in injunction, in which the church was plaintiff and the Ladies Aid the principal defendant, the trial court held, *inter alia*, that the plaintiff was the owner and entitled to exclusive possession and use, subject to a lien of the defendant for certain payments made on a church debt and mortgage. The Ladies Aid appeals.

An organization known as the Williamstown Ladies Aid was organized at Williamstown, Kan., in 1916, there being at that time no church building in the town. In 1919 the Williamstown Baptist Church—hereinafter called the church—was organized and incorporated and erected a church building. Thereafter the Ladies Aid held its meetings in the church building. Apparently the church and the Ladies Aid occupied and used the building jointly for many years under arrangements mutually satisfactory.

In recent years disagreement developed between the two organizations and in July, 1941, the church, through its trustees, brought an action to enjoin the Ladies Aid from possession and from any further use and occupancy of the building. Briefly stated, the allegations of the petition were that the plaintiff was a religious body affiliated with the Kansas Baptist Convention and duly incorporated under Kansas law; that it was the owner of the building which had been erected about twenty years prior thereto for its use as a church organization; that about two years prior to the filing of the petition the defendant had wrongfully and unlawfully, and without any authorization from the plaintiff, entered into possession and occupancy of the building, had continued in such unlawful possession and use and had refused, after request and demand, to surrender possession of the building and equipment, and that by reason thereof the plaintiff was suffering irreparable loss for which it had no adequate remedy at law. The prayer was for a permanent injunction against the Ladies Aid and its individual members, enjoining them from depriving the plaintiff of possession, control, and occupancy, from disturbing and molesting the plaintiff, "its officers, members and congregation at their worship," and directing the defendants to deliver possession of the building and equipment to the plaintiff. Attached to the petition were verified copies of a

mortgage on the property in the amount of one thousand dollars executed by the plaintiff to the Kansas Baptist Convention, together with a partial release of the mortgage, affecting a lot adjoining the building. On motion of the defendant the Kansas Baptist Convention was made an additional party defendant and in March, 1942, filed its answer in which it disclaimed any title or interest in the property and recited that "over a period of several years, this mortgage was paid by the Williamstown Ladies Aid and payment was accepted by the Kansas Baptist Convention as made for the Williamstown Baptist Church," and that final payment upon the mortgage in the sum of $125 was made on or about April 14, 1941. It denied, in the answer, that it had promised to assign the mortgage to the Ladies Aid, and stated that a release of the mortgage was ready for delivery as ordered by the court.

On April 15, 1942, the Ladies Aid filed a lengthy amended answer and cross petition, the allegations of which may be summarized as follows: The church delivered its note and mortgage to the Kansas Baptist Convention on or about November 22, 1919; the partial release of the mortgage was executed on September 10, 1926; the building is the only church building in the town; the defendant has held its regular meetings there since the building was erected in 1919; on January 15, 1924, the church became in default in its payments on the note and mortgage and that—

"A member or members of the . . . Board of Trustees, whose name or names is not now known to the defendant, the Williamstown Ladies' Aid, approached the Williamstown Ladies' Aid to request financial aid in meeting the mortgage payments; that (the said trustee) did then represent . . . that in return for such financial aid the Williamstown Ladies' Aid would acquire a vested interest in the said mortgaged property to the extent of all payments made by the said Williamstown Ladies' Aid on the mortgage or for its payments; and that . . . the said Williamstown Ladies' Aid did pay to the treasurer of the said Williamstown Baptist Church the sum of one hundred and fifty and no/100 Dollars ($150.00) for the purpose of applying the same to the payment of the said mortgage, and that in pursuance of the aforementioned agreement, the said Treasurer of the Corporation . . . did . . . pay the said sum to the Kansas Baptist Convention to be applied to the mortgage debt."

Following this the answer set out further payments alleged to have been made by the defendant in 1928, in the years 1930 to 1938 inclusive, and final payment of $125 on April 14, 1941, amounting in all to $969.26 on principal and interest. The answer further alleged that in making these payments on the mortgage debt the defendants—

"Relied not only on past representations of the state and local church entities as above set forth, nor on instant representations, oral and otherwise, by the local trustees . . . but also on specific offers made by the Kansas Baptist Convention through its Executive Secretary . . . and that at the time of payment the said George T. Wise did repeatedly assure the representatives of the Williamstown Ladies Aid that the said mortgage would be assigned and surrendered to the Williamstown Ladies' Aid upon payment of the sum hereinabove last written . . . on the representations and the behavior of  . . . the Williamstown Baptist Church, a corporation, and the representations of the Kansas Baptist Convention."

The answer further alleged that—

"On July 12, A.D. 1932, the then duly elected, qualified and acting trustees of the . . . Church, or some of their number . . . informed the Ladies' Aid that the Williamstown Baptist Church, a corporation, was no longer able to operate actively, and that inasmuch as the Williamstown Ladies' Aid had acquired, and was then acquiring, an interest in the church property by means of making payments on the Kansas Baptist Convention mortgage, this defendant, the Ladies' Aid, was at that time requested to take full possession of the church building, and did so by means of acceptance of the keys from the . . . treasurer of the church . . .; that from that date up to and including the present the defendant, the Williamstown Ladies' Aid, has had full and exclusive possession of the said church; that it has been the only functioning religious organization in the community; that it has exercised every possible means to obtain the benefits of religious services to the community of Williamstown; that through and by virtue of its efforts, ministers of many faiths, including Mrs. Ruth Henley, a Pentecostal minister, have preached and held services in the church; that the interest of the Williamstown Ladies' Aid in the church building has been open and notorious during all of the times that the payments above set forth have been made up to and including the present time; that the community, the Kansas Baptist Convention, and the Williamstown Baptist Church . . . have not only made the representations hereinabove described with regard to the acquisition of a property interest by the Williamstown Ladies' Aid, and with regard to its right to receive assignment and surrender of the mortgage, but indeed have openly sought, solicited and enjoyed, and have acquiesced by open and constant means, in the continued possession of the Williamstown Ladies' Aid, and in its open and frequent exercise of the concomitants of a possessory interest, including the use of the building and the granting of permission to others to use it, the making of payments as aforesaid, and also including the making of, paying for and furnishing of many supplies, improvements and repairs."

It also appears, from the brief of appellant and otherwise in the record that the answer also alleged substantial payments by the defendant for maintenance, insurance and repairs over the years involved. However, the abstract of the answer does not recite the allegations as to such payments, and as far as the record here discloses the prayer of the answer and cross petition made no reference

to them and asked no relief concerning them. The prayer of the answer and cross petition was—

"That it (defendant) be subrogated to all rights and relief that have accrued in favor of the original mortgagee, the Kansas Baptist Convention; that it recover judgment against the plaintiff in the amount of all sums paid by the said defendant on the said mortgage, together with interest thereon at the rate of five percent per annum from the final date of payment until paid; that it be decreed to be lawfully in possession of the premises as a mortgagee in possession and otherwise as hereinabove set forth; that the above described mortgage be hereby foreclosed by the decree of this Honorable Court, and that it have all other and further relief to which the court may deem it entitled in the premises."

The reply, in addition to general denial, specifically denied that the plaintiff at any time agreed that the defendant should have a vested interest in the property in consideration of payments made upon the mortgage debt, or that the Kansas Baptist Convention had made any promises to assign the mortgage, upon payment, and alleged that such an agreement, if made by the Executive Secretary of the Convention, was not binding because of the lack of authority to make it, and that if made it would be void under the statute of frauds, not being in writing.

It was further alleged in the reply that the Ladies' Aid was an auxiliary of the church and that payments made by it were made on behalf of the church as voluntary contributions.

The case was tried on November 19, 1942. On June 29, 1943, the court filed seventeen numbered findings of fact and seven conclusions of law. On July 10, 1943, the defendant filed motions to strike and substitute other findings of fact and conclusions of law. These and other motions not now material were overruled on the same day.

Upon its own motion the court set aside three of its original conclusions of law and filed "additional and supplemental conclusions of law." To the extent necessary these matters will presently be stated more fully. Motion for new trial was made and overruled.

Attention is called at this point to some confusion in the record. Two copies of what purports to be the final judgment are shown— one in the appellee's counter abstract apparently entered on July 10, 1943, and one in appellants' abstract, said to have been entered on July 23, 1943. The two are not identical. One discrepancy is that one copy contains a paragraph directing release of the mortgage and its delivery to plaintiff, while the other one does not. Another discrepancy is that one copy shows a number of additional paragraphs

dealing with important matters not shown in the other copy. In addition to that, we note among the recitals shown in both copies of final judgment the following: "and the court on its own motion modifies its findings of fact and conclusions of law to conform to the judgment herein rendered and the orders herein made." This certainly does not lessen the confusion. Just what modifications are thus intended is not stated.

We shall assume that the court's findings of fact filed on June 29, 1943, its conclusions of law numbered one to five inclusive, filed on that date, and its additional and supplemental conclusions of law filed on July 10, 1943, constitute the basis for its judgment entered on July 23, 1943, as shown in the abstract.

The findings, conclusions and judgment are rather extensive and we shall not quote them verbatim except where that appears necessary. The findings designated "findings of fact" may be summarized as follows:

1. The Williamstown Baptist church is a duly organized and existing corporation, under a charter issued and filed in 1919. This is not controverted.

2. The Williamstown Ladies' Aid is an unincorporated association organized in 1916 for the purpose stated in its constitution, "to work in the community in unity for the interest of the community and local church, to keep in our said community a fit building for social, religious, spiritual purposes and for funerals and any needy cause it might be necessary for the good of our community." Any woman of the community interested in the work of the association could become a member. At all times a majority of the members have been affiliated with the Baptist church, but many have joined who were not Baptists in some instances who were not members of any church.

3. The church holds legal title to the real estate, including the building.

4. The building was erected by the Williamstown Baptist church in 1919 and dedicated to religious and other benevolent purposes, under the control and direction of the church, through its regularly chosen officers.

5. On November 22, 1919, the church gave its note and mortgage for $1,000 to the Kansas Baptist Convention.

6. A partial release of the mortgage was made in 1926 covering part of a lot adjacent to the church building which had been sold.

7. The Ladies' Aid has at all times since the building was erected held its meetings there and has had "unlimited access to said building with the consent of the officers and trustees" of the church.

8. In 1936 the church "being without a pastor, became dormant and did not hold church services for a period of approximately 'five years." "However, no action was taken to have the church declared extinct" and the three persons named in the petition were duly elected trustees in conformity with the rules of the Baptist denomination.

9. In 1940 the Ladies' Aid gave Mrs. Ruth Henley (named as one of the defendants) permission to use the building for holding religious services under the name of Assembly of God, and such services have since been held, all without consulting the officers or trustees of the church, and without their consent.

10. During the period (about twenty-four years) beginning in 1919 the Ladies' Aid has expended for heat, light, repairs, improvements, furnishings, etc., for the church a total sum of $622.84.

11. The Ladies' Aid has made payments, beginning in 1924, upon the note and mortgage in the total sum of $969.26.

12. All money expended by the Ladies' Aid for maintenance, repairs, improvements, etc., "was voluntarily spent by said organization in consideration of their being permitted to use said building and in keeping with the object expressed in their constitution"—including the object of keeping "in said community a fit building for social, religious spiritual purposes, and for funerals."

13. The payments on the note and mortgage by the Ladies' Aid "were voluntarily made by said Ladies' Aid up to the year 1936, when the Williamstown Baptist Church ceased to hold church services and the court further finds that payments made thereafter by the Williamstown Ladies' Aid to the Kansas Baptist Convention in the sum of $226.16 were made with the understanding and belief on the part of the officers of the Williamstown Ladies' Aid that said mortgage would be assigned to them upon its payment in full and that the said Williamstown Ladies' Aid are entitled to an equitable assignment of said mortgage for the payment to them by the Williamstown Baptist Church of the sum of $226.16."

14. The payments by the Ladies' Aid, both for maintenance, repairs, etc., and on the note and mortgage "were all made from money raised by voluntary contributions from individuals and organizations, and by other means of soliciting and acquiring funds from the

public for religious and benevolent purposes in the usual and customary way of collecting such funds by churches and aid organizations."

15. The title to the real estate, including the building, belongs to the church, not having been sold or otherwise disposed of in any manner provided by law for disposal of church property, but it is subject to an equitable lien of the Ladies' Aid in the sum of $226.16.

The trial court's conclusions of law may be summarized as follows:

1. The church is the "absolute owner of the real estate, the building, and equipment" subject only to an equitable lien of the Ladies' Aid for $226.16.

2. The Ladies' Aid has an equitable interest in the real estate in the sum of $226.16 by virtue of its payments on the note and mortgage after 1936, "such payments having been made with the understanding and belief that the mortgage would be assigned to them."

3. The Ladies' Aid is without authority to permit the organization known as the Assembly of God to use the building without the consent of the officers of the church.

4. The defendant, Mrs. Ruth Henley, and the Assembly of God "are hereby enjoined from using said building for any purpose without the consent of the officers and trustees of the Williamstown Baptist Church." (As far as the record here discloses the journal entry of judgment contained no order based upon this "Conclusion of Law.")

There were some other conclusions of law which were included and perhaps modified by the judgment now to be noted.

We need not repeat those findings of fact which were incorporated in the formal judgment, as entered. The orders, contained in the judgment, with which we are here concerned were as follows:

"5. That the defendants, and each of them be, and they hereby are ordered and commanded forthwith to place the plaintiff, its officers, trustees and directors in actual possession of the church building and real estate premises by vacating said building and premises themselves and delivering to said church trustees the keys to said church building.

"6. That the defendants, and each of them, and particularly the defendants, the Williamstown Ladies' Aid Society be, *and they and each of them are hereby permanently and perpetually restrained and enjoined from possessing, using or occupying said church building or real estate premises, except by permission and under the direction of the plaintiff, the Williamstown Baptist Church, a corporation, its officers, trustees and directors.* (Italics supplied.)

"7. That the defendant, the Williamstown Ladies' Aid Society, have and recover of and from the plaintiff, the Williamstown Baptist Church, a corporation, the sum of $226.16.

"8. That said judgment be, and it is hereby declared to be an equitable mortgage lien against the above described real estate. That said mortgage be, and the same is hereby foreclosed. That if said judgment, together with interest at the rate of 6% per annum from this date, be not paid within thirty days from the date hereof, an order of sale of said real estate shall be issued by the Clerk of the Court upon the praecipe of said defendant or its attorneys of record, and said real estate sold as provided by law in sales of execution, and the proceeds thereof applied in payment of said judgment and interest and the costs of said sale, the redemption period thereof by the plaintiff being hereby fixed at eighteen months from the date of said sale.

"8A. That upon payment to the defendant, the Williamstown Ladies' Aid Society, of the judgment herein rendered, the defendant, the Kansas Baptist Convention, a corporation, its officers and directors, are hereby ordered to release said mortgage and deliver the same to the plaintiff and that the defendant, the Kansas Baptist Convention, a corporation, recover its costs.

"9. That the plaintiff, and the defendant, the Williamstown Ladies' Aid Society, be and they are hereby adjudged to pay the costs of this action in equal amounts, each of said parties to pay one-half of said costs."

And from the additional judgment (heretofore referred to) the following:

"2. That the defendant, the Williamstown Ladies' Aid, its officers and agents, be, and they are hereby restrained and enjoined, perpetually and permanently, from removing or attempting to remove any articles of personal property from said church building or premises which constitutes any part of the equipment of said church building or premises.

"3. That the defendant, the Williamstown Ladies Aid Society, its officers and agents, be, and they are hereby commanded forthwith to return to and replace in said church building, and on said church premises the following described articles of personal property constituting a part of the equipment of said church building and premises, previously removed, or caused to be removed therefrom by said defendant, its officers and agents, to wit: (here follows list of articles, piano, etc.).

"That the defendant the Williamstown Ladies Aid Society be permitted to keep all articles of personal property owned by its members *or by other individuals,* or owned by the Williamstown Ladies Aid and constituting equipment of the Aid as distinquished from equipment of the church building and premises, specifically including the following: (list of articles follows).

"4. That the defendant, the Williamstown Ladies' Aid Society, its officers and agents, be, and they *are hereby restrained and enjoined from selling or offering for sale the real estate involved* in this action hereinbefore ordered sold and the proceeds thereof applied in payment of the judgment hereinbefore rendered in favor of said defendant and from collecting, or taking any steps to collect the amount of said judgment *until said articles of personal property shall have been returned to said church building* and premises, and this order otherwise fully complied with." (Italics supplied.)

Before proceeding to the merits we note appellant's contention that the action was in fact one in law and not in equity; that the cause of action, if any, was simply for possession, under our ejectment statute (G. S. 1935, 60-2001) and there being an adequate remedy at law injunctive relief was not available. It is unnecessary to discuss this contention at any length. We think that under a fair interpretation of the petition a case was stated for much more than mere possession. Furthermore, the appellant here raises the question for the first time, as far as the submitted record discloses. Neither by answer nor otherwise was the issue raised in the trial court. On the contrary, appellant not only treated the action as one sounding in equity on the part of the plaintiff, but in its own cross petition asked for equitable relief.

In approaching this review we are not unmindful of the fact that the trial court was dealing with a sort of controversy among the most perplexing—and unfortunate—which come for judicial settlement. It probably holds first place in that regard—unless, perchance, a school district "row" be a close contender. Nor is this to intimate that the litigation might easily have been avoided nor that the parties were not privileged to maintain what they believed to be their legal rights in the premises.

Our first conclusion may well be stated at the start. The judgment of the trial court cannot stand. In the first place, the facts found by the court do not justify the judgment with reference to present right of possession. Under the findings the church had been without a pastor, had been "dormant," and "did not hold church services for a period of approximately five years" prior to the trial. Under the findings the Ladies' Aid had paid on the note and mortgage during that period the sum of $226.16, for which amount it was given an equitable lien upon the property and the lien ordered foreclosed, under conditions not necessary to note in this connection. Under the findings the Ladies' Aid had full access to and full use of the building since its erection, with the consent of the church, and it is perfectly clear that during the five-year period when the church was no longer functioning as an organization and prior to the instant controversy it was occupying and using the building and was in unquestioned possession. If, by virtue of the situation found by the court, it was entitled to an equitable lien it was plainly entitled to the rights of a mortgagee in possession. As such it was entitled to retain possession until the lien was lifted by satisfaction of the

mortgage debt. (41 C. J. 613, ¶ 581; 36 Am. Jur. 824; *Stouffer v. Harlan*, 68 Kan. 135, 74 Pac. 610; *Mortgage Co. v. Gray*, 68 Kan. 100, 74 Pac. 614; *Bankers Mortgage Co. v. O'Donovan*, 137 Kan. 309, 311-312, 20 P. 2d 809, and cases there cited.) The court was therefore wrong in enjoining the defendant from any further use or occupancy and in giving the plaintiff immediate possession before the obligation was satisfied.

In the second place, the trial court was clearly wrong in denying to the defendant any right to further use of the building as a joint user. Whether or not the defendant was entitled to a vested or title interest in the property by virtue of its payments on the mortgage, certainly it cannot be questioned, on this record, that it was at least entitled to use the building at suitable times not in conflict with services or other use by the church organization. Although it is not denied that appellant paid nearly a thousand dollars on the mortgage debt and spent considerable sums for maintenance and repairs—all with the knowledge and encouragement of the church—the trial court enjoined it from any further use whatever of the property. If it be said that this matter lay within the discretion of the trial court in the exercise of its equitable powers, then we would simply say, without need for weighing the contention, that the action taken in denying the defendant any use whatever of the building was an abuse of discretion and the judgment should on that account be set aside. In this connection the specific terms of the injunction are to be noted. Not only was the Ladies' Aid ousted from the building as an organization, but the order extended to the individual members, permanently enjoining each of them from using or occupying the building except with permission and under the direction of the officers of the church (see par. 6 of judgment, *supra*). Compliance with this order would prevent any member of the Ladies' Aid—including those who are Baptists—from attending church services in the building without permission of the trustees. Obviously such a provision could not be permitted to stand.

Being unable to affirm the judgment, what disposition can we make of the matter that will not leave it to disturbing uncertainty and to further and probably acrimonious controversy? Clearly it is to the interest of the parties and to the community they serve that this litigation be terminated as speedily as possible. Under similar circumstances—where, for instance, established facts plainly justify modification of the judgment; or where a sound judicial policy re-

quires that long-continued litigation be brought to an end; or where no useful purpose would be served by a new trial—this court has not hesitated to modify and to order judgment. (Among many cases see *Worth v. Butler,* 83 Kan. 513, 521, 112 Pac. 111; *Mitchell v. Derby Oil Co.,* 117 Kan. 520, 531, 232 Pac. 224; *Bolinger v. Giles,* 125 Kan. 54, 58, 262 Pac. 1022; *Kansas Wheat Growers Ass'n v. Smith,* 127 Kan. 267, 270, 271, 273 Pac. 437; *Security Benefit Ass'n v. Swartz,* 146 Kan. 267, 70 P. 2d 16; *Weichold v. Day,* 147 Kan. 367, 76 P. 2d 784.) Its authority for doing so—if specific authority be needed—is to be found in the provisions of G. S. 1935, 60-3317, that: "in any case pending before it, the court shall render such final judgment as it deems that justice requires, or direct such judgment to be rendered by the court from which the appeal was taken, without regard to technical errors and irregularities in the proceedings of the trial court." The statutory mandate applies with special pertinency to an equity case, such as the one before us. (*Prudential Ins. Co. v. Foster,* 139 Kan. 112, 117, 30 P. 2d 104.)

It clearly appears on this record, either from the trial court's findings or the unquestioned facts, that:

1. Beginning in 1924 the appellant began making payments upon the church debt and continued doing so until the debt had been fully discharged, its total payments amounting to $969.26.

2. During the same period it paid for maintenance and repairs $622.84.

3. During this whole period no payments were made by the church on the debt and mortgage.

4. These payments were made with the knowledge and acquiescence of the church.

5. At least as far back as 1936 appellant's payments on the debt were made with the understanding that upon completing payment in full the mortgage would be assigned to it.

6. For at least five years prior to the trial the church organization had no pastor; was not functioning in any way; made no use of the building; paid nothing for its maintenance or repair; and by its behavior acquiesced in the occupancy and expenditures by appellant for preserving the property.

7. During those five years the appellant was in uninterrupted and exclusive possession of the building, under the understanding above stated.

Upon those facts we conclude that not only was the appellant a

mortgagee in possession but that in all good conscience it is entitled to an equitable lien for the full amount of $969.26 which it paid upon the debt; that it is entitled to be subrogated to the rights of the mortgagee in that amount and is entitled to have the mortgage assigned to it. Judgment should be entered giving to appellant, the Ladies' Aid association, full and exclusive right of possession, control, and use of the building, subject to right of redemption in appellee, the mortgagor, upon payment to appellant of $969.26, together with costs of the action, title to vest in trustees for the Ladies' Aid association upon failure of the church to redeem within a time fixed therefor by the court. Upon the making of such payment the appellee, the Williamstown Baptist church, should have full and exclusive right of possession, control, and use of the building and its title therein be cleared as against any adverse claim or right asserted on the part of the appellant, the Ladies' Aid association.

Two other matters require attention. Mrs. Ruth Henley and the Assembly of God were parties defendant. No issues relating to them were presented in the briefs or here argued. We need only add that as to such defendants, as well as to other persons, the privilege of using the church building is within the discretion, reasonably exercised, of those who under this decision are entitled to the exclusive possession, control and use of the building.

The trial court made findings with reference to ownership of certain personal property said to be part of the church equipment. Those matters were not argued here. Accordingly, we shall not disturb the judgment with reference to such ownership contained in paragraphs 2 to 3, inclusive, of the judgment entered on July 23, 1943, upon plaintiff's motion for a supplemental order.

The judgment is reversed and the cause remanded with directions to enter such orders and judgments as may be appropriate and necessary to comply with the conclusions stated in this opinion.

HOCH, J. (dissenting in part): The court's opinion also represents, in large part, my personal views. In one very important particular I cannot concur. I agree that the injunction should be set aside and upon the trial's findings of fact the appellant should be declared a mortgagee in possession with the exclusive right of possession of the building until its lien is satisfied. But I find no judicial warrant for increasing the amount of the lien to in-

clude all payments made upon the church debt during the twelve years prior to 1936. In doing so we disregard findings by the trial court upon a material and primary issue of fact as to which there was conflicting evidence. In effect we make our own findings of fact and upon such findings order judgment. The fact that this is an action in equity and that we may have some notions of our own about the over-all equities of the situation does not, in my opinion, so enlarge our function as a court of review.

Appellant claimed that the payments it made upon the church debt, beginning in 1924, were made upon representations of some "member or members of the Board of Trustees" that it would thereby "acquire a vested interest" in the property. Appellee denied that any such representations were made, and contended that payments were made voluntarily, in the customary manner of church contributions. At the trial the appellant made no attempt to identify any persons as having made such representations. The appellee put on numerous witnesses, including persons who had been trustees, who denied that such representations had at any time been made. The trial court made specific findings upon the issue. It found for the appellee as to payments made prior to 1936 and for the appellant as to payments made thereafter. It found that all payments made prior to 1936, when the church was functioning, were voluntarily made, without any agreement or understanding that a vested interest in the building was being acquired. There was abundant evidence to support that finding. Disregarding that finding we here proceed to give appellant a lien representing all payments made during the twelve years prior to 1936. The idea that contributors who make voluntary payments on a church debt thereby acquire a title or vested interest in the church building is a novel and startling doctrine. Its general application would bring astounding results.

The trial court found that in 1936 the church became "dormant" and had no pastor and held no regular services for the next five years. Appellant contends that the church ceased to function as an organization in 1932. There is ample evidence to support the court's finding as to the date. And even appellant does not contend that the church was not actively functioning up to 1932. For all payments made during the five years after the church ceased to function the trial court gave appellant a lien. It did so upon a finding that such payments were made "with the understanding" and be-

lief on the part of the appellant that "said mortgage would be assigned to them upon its payment in full." The context of that finding, and the other findings clearly indicate that the understanding as to right of assignment related solely to a lien for payments made in 1936 and subsequent thereto.

Whatever may have been the old chancery practice or may be true under other codes of procedure our jurisdiction, except as to proceedings in quo warranto, mandamus, and habeas corpus brought here originally, is appellate only (Const. art. 3, § 3) and we have no power to try controverted issues *de novo* (*Brown v. Brown*, 146 Kan. 7, 11, 68 P. 2d 1105). The fact that this is an action in equity does not alter the rule. We have specifically so held. (*Safford v. Tibbets*, 104 Kan. 224, 227, 178 Pac. 618.) This is in line with the general rule that review in injunction cases is governed by the general rules applicable to appellate procedure and that conflicting evidence on issues of fact will not be weighed, where the hearing is not *de novo*. (28 Am. Jur. 498-500.)

In ordering judgment the court relies largely, in the opinion, upon the provision of G. S. 1935, 60-3317, that this court "shall render such final judgment as it deems justice requires." That section has an important field of application, particularly in its direction that such judgment shall be rendered "without regard to technical errors and irregularities in the proceedings of the trial court." But to invoke the statute upon this record, in support of our power to order the judgment here directed, is to indulge—at least by clear implication —a dangerous construction far-reaching in character. The statute was not intended, in my opinion, to make this court a general trier of facts whenever it "deems justice requires" the exercise of such power, nor to set aside other established principles of appellate review.

PARKER, J., joins in the foregoing dissenting opinion.