No. 37,281

CLARENCE E. HUGHES et al., *Appellants*, v. THOMAS GROSSMAN
et al., *Appellees*.

(201 P. 2d 670)

Opinion filed
January 22, 1949.

*John B. Pierson,* of Ottawa, and *Buford E. Braly,* of Kansas City, argued
the cause, and were on the briefs for the appellants.

*Forrest A. Jackson,* of Lawrence, argued the cause, and was on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This is an injunction proceeding arising from a schism in a Baptist church. The plaintiffs appeal from a judgment in district court denying them injunctive relief.

The action was instituted by Clarence E. Hughes, Charles W. Simmons and William Osburn, as trustees of the Centropolis Baptist Church and divers persons, as plaintiffs, all claiming to be members of such church, an unincorporated religious association of the Baptist faith, sometimes known as the Centropolis Missionary Baptist Church and as the Missionary Baptist Church of Centropolis, against Thomas Grossman, who throughout the entire period of the controversy involved has assumed to act as minister of the church, and numerous others as defendants.

Nothing worth-while would be accomplished by setting forth the pleadings at length or relating numerous factual averments thereof having little bearing upon what we regard as the vital issues involved. For appellate purposes all that is required is to say: (1) The petition charges the defendants with having taken possession and dispossessed the plaintiffs of all the church property, including the church building which was deeded to the trustees of the Centropolis Baptist Church and their successors in 1885, and alleges that defendants are now occupying and using such property to the exclusion of plaintiffs after having departed from the original and fundamental teachings, customs, usages, doctrines and tenets of the original Baptist faith. In the prayer of such pleading the plaintiffs ask for an injunction, for an accounting and for equitable relief. (2) The answer denies generally all material allegations of the petition, asserts that seven of the defendants, naming them, are trustees of the Centropolis Baptist Church, which owns the real estate and other church property in question, and in effect charges that all the plaintiffs have separated from such church, withdrawn membership therefrom and are now members of a newly created church known as the Missionary Baptist Church and sometimes as the Centropolis First Baptist Church. It also asks that the plaintiffs be denied all relief sought by them in the action. (3) The plaintiffs' reply consists of a general denial with a specific denial that the seven individuals named by defendants are the lawful trustees or members of the Centropolis Baptist Church, sometimes known as

the Missionary Baptist Church of Centropolis and the Centropolis Baptist Church.

During the trial, with issues formed as heretofore related, there was a parade of witnesses on behalf of the respective parties. We are not disposed to burden this opinion with a detailed statement of the record evidence or even a résumé of the factual picture it reveals, much of which we must admit and feel constrained to state is based upon action and conduct which is entirely inconsistent with the well-recognized, long established, and salutary principles of the christian faith to which the parties profess to adhere. On that account our statement of the facts, like our summary of the pleadings, will be confined to only such evidence as we deem essential and necessary to effect a final disposition of the cause. All factual matters hereinafter mentioned are based upon uncontroverted testimony or are conceded by the parties.

On the 29th day of October, 1885, Lots 11 and 12 in Block 54 in the village of Centropolis were conveyed by the then owners thereof to the trustees of the Centropolis Baptist Church and their successors. Later on, the exact date of which is not material and is not disclosed, the church erected a house of worship on this real estate, which is the church involved in the instant controversy.

This church was organized in 1885 and it definitely appears that many years ago, if not from the date it first came into existence, up to the occurrence of the difficulties herein involved it affiliated with the national organization of Baptist churches as a Missionary Baptist Church and in connection with that affiliation was a member of the Northern Baptist Convention, the Kansas Baptist Convention and the Miami Conference, being the national, state and local organizations, respectively, with which it was entitled to associate as a church of the long-established and well-recognized Baptist faith. It also appears that about the year 1923 the church adopted for its use the accepted manual of the Baptist churches, conceded by all parties to set forth the doctrines, customs; traditions and usages, governing the local church in the carrying on and transacting of its affairs.

All Baptist churches are recognized as Missionary Baptists and the Centropolis Baptist Church, whether known by that name or sometimes referred to as the Centropolis Missionary Baptist Church, the Centropolis First Baptist Church or the Missionary Baptist Church of Centropolis, is one and the same church.

During the summer of 1945 the Centropolis Baptist Church, referred to throughout the remainder of this factual statement in the interest of brevity as the "church," was without a minister. About that time Thomas Grossman, one of the appellees herein, appeared on the scene and was ultimately employed by the church as its pastor. Within a short time discord and dissension arose. It soon became evident that Mr. Grossman was not what we choose to call a regular or missionary Baptist but was a member of a newly organized religious group or association known as the Independent Fundamentalist Baptists which organization, under his own testimony, and that of other witnesses, had nothing to do with and was neither connected nor associated with or recognized by the Northern Baptist Convention, the Kansas Baptist Convention or the Miami Conference.

Due to Mr. Grossman's teachings and influence it was not long until the church membership separated into two groups, namely, Missionary Baptists and Independent Fundamentalist Baptists. Soon the church building was placed under lock and key and free access to the church and its property was denied to the Missionary Baptists except when the Independent Fundamentalists were holding meetings and then the former were required to worship in the church as Independent Fundamentalists or not at all with the result they commenced to hold their church meetings in the schoolhouse. About the same time, the defendants sent a letter to the Northern Baptist Convention, the Miami Conference and the Kansas Baptist Convention, stating that the Centropolis Baptist Church was withdrawing from and disaffiliating with each of such organizations.

As a result of the foregoing conduct and action on the part of the Independent Fundamentalists, and at the request of members still adhering to the Missionary Baptist faith, the Miami Conference was called upon to attempt to adjust the difficulties in the church. It sent representatives to Centropolis who, at the close of the investigation, found that Mr. Grossman and the other defendants herein named had departed from, while the plaintiffs still adhered to, the fundamental and original doctrines, tenets, usages, customs, teachings and practices of the Baptist faith.

In August, 1943, prior to all difficulties herein involved, the duly elected trustees of the church were Everett Simmons, John Moses and William Osburn. Following the investigation by the Miami Conference and pursuant to a meeting held sometime in April, 1947,

on the front steps of the church because the keys to the church building could not be obtained from the Independent Fundamentalists, the plaintiffs, Clarence E. Hughes, Charles W. Simmons and William Osburn, as a result of election or having been already elected, were and now are recognized by the Miami Conference and the Missionary Baptist membership as the legal trustees of the church. On February 6, 1947, at an election held by the Independent Fundamentalist group seven individuals, all defendants herein, were declared elected as trustees thereof.

Faced by the foregoing facts and many others which, as we have indicated, were either immaterial or of less consequence and therefore not mentioned in the foregoing statement, the trial court denied plaintiffs an injunction, held that the lawful trustees of the church on the date of the commencement of the action and the rendition of its decree were those occupying such positions in August, 1943, namely, William Osburn, who is now a member of the Missionary Baptist faction, and John Moses and Everett Simmons, who at present are members of the Independent Fundamentalist group, and retained jurisdiction of all other issues for future consideration in connection with whatever action the congregation of the Centropolis Baptist Church might take in the future. Thereupon the plaintiffs perfected this appeal.

Appellants specify several errors as grounds for the reversal of the judgment which, when they are analyzed, can be summarized as follows: (1) The court erred in holding as a matter of law that none of the acts and conduct of the appellees as disclosed by the evidence and the conceded facts constituted departure from the customs, doctrines, usages, traditions and tenets of the Centropolis Baptist Church, and (2) that in view of such evidence and conceded facts the appellants were entitled to an injunction restraining the appellees from appropriating the property of the Centropolis Baptist Church to their use and benefit as Independent Fundamentalist Baptists.

Fortunately church controversies have not been provocative of much litigation in this jurisdiction. However, cases of that nature reaching this court have resulted in the enunciation of principles governing the disposition of religious disputes generally which are now regarded as the established law of this state and should be kept in mind at all times in giving consideration to questions of such character on appellate review.

That injunction is a proper remedy to settle the rights of two discordant factions of a church congregation with respect to use and control of the church property is no longer a debatable question (*Williamstown Baptist Church v. Henley,* 158 Kan. 324, 148 P. 2d 269).

It has long been settled that in injunction proceedings or other actions where property is claimed by church organizations not incorporated, and the church property is in controversy, any number of the members of the association or congregation may maintain the cause for the benefit of the church (*Fink v. Umscheid,* 40 Kan. 271, 19 Pac. 623).

We have expressly held that controversies over theological questions and matters ecclesiastical in character are to be determined by the authorities of the particular church involved according to its laws and usages and that ordinarily the civil courts are without jurisdiction to review or control the decisions of duly constituted church authorities (*King v. Smith,* 106 Kan. 624, 189 Pac. 147). On the other hand, we have repeatedly recognized and applied the rule that where such controversies involve civil or property rights the civil courts will take jurisdiction and decide the merits of the case for themselves (see decisions heretofore cited, also *United Brethern, etc., v. Mount Carmel Community Cemetery Ass'n,* 152 Kan. 243, 103 P. 2d 877; *Jackson v. Jones,* 130 Kan. 488, 287 Pac. 603).

Another rule, recognized and applied by this court (see *Jackson v. Jones,* supra) and supported by the overwhelming weight of authority in other jurisdictions, is well and succinctly stated in 54 C. J. 74, 75, §§ 164 and 167, which in part read:

"Speaking generally and without regard to particular issues of doctrine and of possible breach of trust or condition involved, the separation or secession of part of the members from a church does not destroy the identity of the church nor lessen the rights of those adhering to the organization, even though the minister and trustees are among the seceders; but members seceding from a church thereby forfeit all rights to the church property, even though they keep the name of the old society, or even though they incorporate and take its name. . . ." (§ 164.)

"Where the church holds its property or is entitled to its use as a denominational church, the courts, when called upon, will award the property, and all rights pertaining thereto, to those who continue to adhere to the doctrine, tenets, and rules of the church as they existed before the division; even though they constitute only the minority, . . ." (§ 167.)

To the same general effect is 45 Am. Jur. 775, 776, § 66, where the following statement appears:

"Where property is acquired by a religious society and the conveyance under which the title passes imposes no limitation upon the uses to which the property is to be devoted, so long as any existing organization can be ascertained to be that to which the property was granted, or its regular and legitimate successor, it is entitled to the use of the property. In case of a schism in such an organization, no inquiry will be had into the existing religious opinions of those who comprise the legal and regular organizations; rather, the fundamental inquiry is one of identity of organizations—in other words, which of the rival factions is the true representative and successor of the society as it existed prior to the schism. In general, that question is to be determined by ascertaining which of the two factions adheres to or is sanctioned by the governing body of the society, and those who adhere to the acknowledged organization are entitled to the use of the property, whether or not they adhere to the doctrines originally professed . . ."

Numerous decisions supporting the foregoing principles will be found listed in American Digest System under the title of "Religious Societies," § 23, also in 70 A. L. R., anno. 75. For more general statements with respect to the same principles, and others dealing with the general theme of ecclesiastical law a subject on which we do not elaborate because to do so is beyond our province, see the excellent articles on "Religious Societies," in 54 C. J. 7-103, and 45 Am. Jur. 722-800.

Having clearly established the facts and the applicable governing principles there need be little difficulty in reaching a decision on the issues involved in the instant action.

Early in this opinion we pointed out that all parties involved concede that at least from and after 1923 the Centropolis Baptist Church adopted for its use the accepted manual of all the Baptist churches as the pole star fixing its doctrines, customs, traditions, tenets, practices and usages. We therefore turn directly to the manual. Article 8 under the general heading "Rules of Church Order," subtitle "Representation in Association," reads:

"Once in each year delegates shall be appointed to represent the church in the Association; whose duty it shall be to furnish to the Association a statement of the condition of the church, including its changes; to represent faithfully the desires of the church; and to coöperate with the messengers of other churches in advancing the kingdom of Christ." (p. 33.)

We also called attention to the fact, and repeat for emphasis, that the appellees concede that as Independent Fundamentalists they

do not recognize the Northern Baptist Convention, the Kansas Baptist Convention or the Miami Conference and if they do not actually concede it in effect admit the church to which they now profess to belong and maintain under the name Centropolis Baptist Church has done all within its power to withdraw from membership in and secede from each and all of such organizations which, under the testimony of the ecclesiastical witnesses, constitute the "Association" referred to in the manual. *E. g.*, one of such witnesses whose testimony on the point is undenied in answering a question pertaining to the church association said:

"That is composed by representatives of the churches of the State. If you don't mind I will give you the steps. First, is the organization of the local church. The next step in the association is the local association. The third step is the State Convention and the fourth is the Northern Baptist Convention. Those are the steps of the association."

Summarizing, the uncontroverted record discloses that on the date of the institution of the instant action the Baptist manual requiring membership in the Baptist Association governed the Centropolis Baptist Church, to which the property herein involved belonged. It further reveals the appellees have severed their affiliation with, and on behalf of the church have attempted to withdraw its membership in the association recognized under the established church authority. We therefore hold that the Independent Fundamentalists, the appellees herein, in repudiating the practice of conventionism as recognized and required by the manual departed from the doctrine, tenets, customs and traditions of the Centropolis Baptist Church. It follows, under the rule that as between two opposing factions of an unincorporated church property acquired by the organization will be adjudged to be the property of the faction which abides by the principles and rules of church government recognized by the united body prior to any schism, that both grounds of error assigned by the appellants, who adhere to such principles and rules, are well founded and that the trial court erred in denying them an injunction restraining the appellees from interfering with their management and control of the property belonging to the Centropolis Baptist Church, sometimes known as the Missionary Baptist Church of Centropolis and as the Centropolis First Baptist Church.

We are likewise of the opinion the court erred in holding the present trustees of the church are the persons elected to such posi-

tions in 1943. By their repudiation of the heretofore mentioned fundamental principles and rules of church government required by the custom and practice of the Baptist Church, Everett Simmons and John Moses forfeited their right as individuals to possession and control of the church property. It necessarily follows that any rights they may have had to possession, control or management of that property by virtue of having been elected as trustees in 1943 has also been forfeited.

There is, as appellants insist, sound authority for holding that the individuals elected at the April, 1947, meeting called by the Miami Conference and since recognized by the association, are the legal trustees. In 45 Am. Jur. 752, § 41, it is said:

"If civil rights, as contradistinguished from ecclesiastical questions, are passed upon by a church tribunal, the secular courts will, as a general rule decide the merits of the case for themselves. But, according to the rule broadly stated by some courts, when a civil right depends upon some matter pertaining to ecclesiastical affairs, the civil tribunal tries the right and nothing more, taking the ecclesiastical decision out of which the civil right has arisen as it finds them, and accepting such decisions as matters adjudicated by an- to questions of discipline, faith, or ecclesiastical rules, custom, or law affecting the members of the church must be accepted by legal tribunals as final and binding upon them in their application to a case before them. . . ."

Be that as it may, we are not disposed to here pass upon the question. Church trustees are not essential to the maintainance of this action or its disposition and they can easily be elected once the church property is restored to those adhering to the original faith by the appellees who are no longer recognized by the Baptist Association as members of the Centropolis Baptist Church.

The judgment is reversed and the cause remanded to the district court with instructions to set aside its finding as to who are the present trustees of the Centropolis Baptist Church and with directions to render judgment perpetually enjoining the defendants, and each of them, from occupying or possessing the property, buildings and appurtenances of such church and from interfering with the plaintiffs in the management, control, possession or custody of the church, its property or its business affairs.