No. 42,159

MERLIN SIMPSON et al., *Appellees*, v. E. L. MULLINEAUX, Gospel Assembly Church, by E. L. MULLINEAUX, MID-KANSAS FEDERAL SAVINGS & LOAN ASSOCIATION of Wichita, and the Unknown Heirs, Executors, Administrators, Devisees, Trustees and Assigns, or their Unknown Successors, Trustees and Assigns; the Unknown Spouses of the Defendants; the Unknown Guardians and Trustees of such of the Defendants as are Minors, or in anywise under legal disability, *Appellants*.

(360 P. 2d 893)

Opinion filed April 8, 1961.

*E. H. Hatcher* of Topeka, and *John Madden* of Wichita argued the cause, and *Richard L. Ebersole* of Wichita was with them on the briefs for the appellants.

*Pat Warnick* of Wichita argued the cause, and *Alan B. Phares* of Wichita was with him on the briefs for the appellees.

The opinion of the court was delivered by

JACKSON, J.: The appeal herein involves a schism in the Gospel Assembly Church of Wichita. Some sixty former members of the church in 1955 filed a petition containing four causes of action in which they sought to partition the church property, and to enjoin the defendants from doing various things contrary to the alleged interests of the plaintiffs. The church was and is an unincorporated church society, and its property stood in the name of three trustees. The minister was one of the trustees and the other two had been elected by the congregation at a meeting of the church after their names had been suggested by the minister. There was a statement of trust signed and acknowledged by the trustees filed of record in the register of deeds office in Sedgwick county.

As appears from the caption above, the church trustees were not made parties, with the exception of the minister. Defendants attempted to attack the petition by motion and a demurrer on the

ground that no cause of action was stated and no proper defendants were named. The trial court overruled these objections but since the case was tried to the court and evidence adduced, we shall not take time to consider the sufficiency of the pleadings. After the trial, the trial court held that plaintiffs were entitled to a partition of the church property, and entered judgment to that effect. Defendants have appealed.

In discussing the appeal, we shall continue to refer to the parties as plaintiffs and defendants.

The Gospel Assembly Church here concerned is one of the churches of a type of religious society or denomination which was founded in 1911 by a man known as the Reverend Mr. W. M. Sowders. This church was started by the present minister, the Reverend Mr. Mullineaux, when he came to Wichita in 1941. The evidence shows that the Reverend Mr. Sowders was the leader of the denomination until his death in 1951 or 1952; that thereafter, a man referred to as a Reverend Mr. Jolly attempted to take the place of Sowders, but that throughout the country, many of the Gospel Assembly ministers objected to the Jolly teachings and refused to follow him. It would appear that certain schisms were created in many of the churches.

A similar dispute among the members of the Gospel Assembly Church in Kansas City was the foundation of the case of *Dawkins v. Dawkins* (40,956), 183 Kan. 323, 328 P. 2d 346; and the companion case of *Dawkins v. Dawkins* (40,957), 183 Kan. 336, 328 P. 2d 355. Another similarity exists between the case at bar and the Dawkins cases. It would appear that both in the case of minister Dawkins and minister Mullineaux, the Reverend Mr. Jolly was able to persuade Mrs. Dawkins and Mrs. Mullineaux to lead the dissenting group in each church against their own husbands, a fact which caused a divorce in each instance.

But this court cannot attempt to decide which church faction was following the doctrines laid down by Sowders, the founder of the church. It may be mentioned that the defendants did introduce a rather large number of ministers from other cities who testified they had broken with Jolly, as had minister Mullineaux. There appears to be no ecclesiastical system in the Gospel Assembly churches to determine the true doctrine. The evidence shows that each minister and congregation actually govern their own church. The named plaintiffs appear to be the principal dissenters, some

sixty in number. It is not disputed that the church numbered some three hundred-fifty to four hundred members at the time of the schism in 1955. The church with the remaining majority of the congregation has continued to operate and carry on the church affairs. The proposed new church has not been built because this suit has tied up the funds. The financial institution named as a party defendant is a depository of money of the church.

There is one fact which determines this case and shows that the trial court's decision must be reversed. Each of the plaintiffs who testified stated emphatically that he had left the church at the time of the schism and, as far as the evidence proved, so had all of the other plaintiffs.

It is well settled law that members of a church may not voluntarily withdraw and then endeavor to claim some right in the church property. In *Slinker v. Building Association*, 96 Kan. 672, 153 Pac. 537, it was said:

"The evidence shows that the appellant and those acting with her have voluntarily withdrawn from the church. It is settled law that they have no interest in the property of the church, and of course they have no claim to any portion of this fund if it was in fact raised for the benefit of the church. (34 Cyc. 1167; 24 A. & E. Encyc. of L. 353, 355.)" (p. 674.)

In *Dawkins v. Dawkins* (40,956), supra, it was said at page 326 and 327:

"The wife and most of her witnesses were former members of the church who had severed their relations with the church and its pastor because of doctrinal differences. As such former members, they have no right to impair the title of the church property and the fiduciary relation of the pastor of the church to his charge."

When the question is researched this court has decided a number of cases involving schisms in churches. When it can be decided by church law or ecclesiastical hierarchy which group represents the true doctrine of the church, that group will receive the whole of the church property. But when church members simply leave the church they forfeit any right to the church property. The following additional cases cite the rules governing church property: *Venable v. Ebenezer Baptist Church*, 25 Kan. *177; *Comm'rs of Wyandotte Co. v. Presbyterian Church*, 30 Kan. 620, 1 Pac. 109; *Jackson v. Jones*, 130 Kan. 488, 287 Pac. 603; *United Brethren Etc. v. Mount Carmel Community Cemetery Ass'n*, 152 Kan. 243, 103 P. 2d 877; *Hughes v. Grossman*, 166 Kan. 325, p. 330, 201 P. 2d 670;

*Whipple v. Fehsenfeld,* 173 Kan. 427, 249 P. 2d 638; and *Kansas Baptist Convention v. Smith,* 178 Kan. 123, 283 P. 2d 503.

In 76 C. J. S. 850, *Religious Societies* it is said:

"The separation or secession of some of the members from a church does not destroy the identity of the church or lessen the rights of those adhering to the organization, even though the minister and trustees are among the seceders.

"On secession, whether by members from a church, or by a congregation from an ecclesiastical system with which it was associated, the seceding parties forfeit all rights to the church property even though they keep the name of the old society, . . ."

See also 45 Am. Jur. *Religious Societies* § 67, p. 776.

Under the evidence, none of the plaintiffs was contending they had any connection with the present church; they had "left the church"; many of these people were no longer residents of Wichita. There were some half-hearted statements that the minister had said plaintiffs could have their church contributions returned. While the minister attempted to explain this statement that the plaintiffs would have to go before the congregation, it does not seem to have impressed the trial court. However, we have been cited to no authority which supports the view that a minister of a corporate or unincorporated church may gratuitously return church contributions to certain church goers. The evidence shows that those who attended the Gospel Assembly were not known as "members" under the doctrines of the church. We see nothing in that practice which would enhance the claims of plaintiffs to the church property.

The trial court spent two weeks hearing this case, and nothing is to be gained by anyone in carrying on the dispute to further extent. Nothing said in this opinion is to be understood as an endorsement of the policies of the Gospel Assembly Churches, either in their theological beliefs or in the manner of carrying on business affairs. However, under the constitution of this nation and this state, these people, many of them lacking in formal education, have the unfettered right to go to the church of their choice, or to leave such church, as the plaintiffs have done.

The judgment of the trial court must be reversed and the court is hereby directed to enter judgment for defendants for their costs in this action.

It is so ordered.