MOUNT HELM BAPTIST CHURCH ET AL. *v.* CHARLES P. JONES
ET AL.

1. JURISDICTION, ECCLESIASTICAL. *Courts. Property Rights. Churches.*

   The courts of this state do not exercise ecclesiastical jurisdiction. They accept whatever the highest authority of a church determines to be its faith and practices; but property rights of churches are within their protecting power.

2. SAME. *Change of name. Renouncing faith, etc. Quieting title.*

   Where the majority faction of a Baptist church, by entries on its records, repudiated all creeds as "man-made devices," expelled the minority members, elected new trustees, and changed the name of their church from "Baptist" to "Church of God," and of their house of worship from "Mount Helm Baptist Church" to "Christ's Tabernacle, Church of God," the courts will entertain a suit by the old organization to quiet title to church property.

3. SAME. *New church. New faith.*

   A majority faction in a church which, by declarations on its minutes, severs its connection with the denomination to which it belonged and reorganizes as a new church, with a new faith, cannot longer claim to be the church whose faith it has repudiated, and has no right to property donated to the old organization.

FROM the chancery court of, first district, Hinds county.

HON. HENRY C. CONN, Chancellor.

The Mount Helm Baptist Church and others, appellants, were the complainants in the court below; Jones and others, appellees, were defendants there.

The Mount Helm Baptist Church of Jackson, Miss., was organized by the colored people of the Baptist faith in that city prior to 1868. In January, 1868, after the church was organized, Thomas Helm and his wife conveyed to the trustees of the Mount Helm Baptist Church and their successors in office the lot on which the church now stands, it being a part of the property involved in this controversy. The members of the

church at that time erected on the lot the church building, which is still standing, as a Baptist church, and the same was dedicated as a Baptist church. Afterwards the members of the church, by contribution from the members, purchased an adjoining lot, and erected a parsonage, which property is also in controversy in this suit. This property, after being obtained by the church, was dedicated and used as a place of worship in accordance with the teachings, doctrines, and faith of the Baptist denomination, and was so used by the members of said church from the time it was organized down to a short time before this suit was brought, and was recognized as a Baptist church in Baptist associations of the state, in Baptist state conventions, and in national conventions. In 1871 the church was, by act of the legislature, incorporated as Mount Helm Baptist Church. In 1895 C. P. Jones, one of the appellees, was elected pastor of the church, which moved on harmoniously as a Baptist church until 1896, when Jones, as alleged by appellants in their bill, began to preach and teach adversely to Baptist churches and Baptist doctrine, and succeeded in persuading to follow him a large number of the members of the Mount Helm Baptist Church. On account of his anti-Baptist propensities and teachings, Jones and the faction that followed him were excluded from Baptist associations and state conventions. On June 19, 1898, Jones, as pastor, and his faction in control of the church property, entered on the minute book of their organization the following:

"The Mount Helm Baptist Church met at 11 o'clock, and held a Bible reading and testimonies of divine healing. A very deep service. Brother Jones read the second chapter of second Timothy, and offered prayer. Collections were $22.10 for the pastor and for the blind man $2.40. Brother Jones preached from the ninth verse, seventh chapter of Isaiah. The sermon was deep and full of love, and pleasing to all, after which the church resolved to cut off the name 'Baptist,' and be known as the 'Church of Christ,' separated from all creeds,

denominations, associations, and conventions. We separte from associations, conventions, creeds, etc., because of the evils in them; and this was unanimously adoped. Brother Rollins was dismissed from the office of deacon because of general disagreement with the board and pastor. The motion of dismissal made by Brother Minor."

After the passing of this resolution, Jones and his faction took charge of the church property, and held their meetings in it, over the protest of the minority faction. In February, 1899, Jones and his faction passed some resolutions, which contained the following:

"Resolved, that we, now and heretofore known as the 'Mount Helm Baptist Church,' do renounce this unscriptural appellation, and call ourselves, as in scripture, the 'Church of God,' and change the name of the house of worship from 'Mount Helm Baptist Church' to 'Christ's Tabernacle,' making our name in full, 'Christ's Tabernacle, Church of God.' Resolved, that our trustees be and are hereby instructed to change the church records to this effect; that is, change the charter of incorporation of said Mount Helm Baptist Church, and convey the property of said Mount Helm Baptist Church, so that said property of Mount Helm Baptist Church shall be owned by Christ's Tabernacle, Church of God. The property change is to be effective when the trustees make the legal change. Adopted without protest in the regular conference meeting, February 9, 1899."

The resolutions containing the above clause were adopted, as shown by the minutes of the meeting. At their meeting on February 23, 1899, Jones and his faction excluded all members who were protesting against the change of the church and its property and name into the new church from the organization, and proceeded to use the church property and parsonage for their own use. At this same meeting the following entry was made on their minute book:

"The Mount Helm Baptist Church met in special session. Nothing but male members in good standing allowed to remain. After prayer service, Brother Jones read the third chapter of Ephesians, commenting as he read. Pastor then suggested that we select a committee for all applicants for membership unless such as those known to be sincere with the word of God. The subject pleased all present. The pastor then asked that we pray over it. The trustees reported that the church deeds could not be changed unless a lawsuit; and after an examination, not desiring to violate the word of God—1st Cor., 6th chap.—by suggestion of the pastor, the matter was cast out, and we continue the name, Mount Helm Baptist Church. The suggestion was unanimously received after prayer by pastor. Adjourned. Benediction by pastor."

The minority faction, after being excluded by Jones and his faction from their property, continued as the Mount Helm Baptist Church, kept the minutes of their meetings, and had their pastor and church services, having arranged to hold their meetings in a building in another part of the city. This minority faction afterwards, as the Mount Helm Baptist Church, filed their bill in this cause, setting up the foregoing facts, and alleging that Jones and his faction were not the Mount Helm Baptist Church; that they were not Baptist at all; that they had separated from the Baptist denomination and Baptist church, and had set up a new church of their own, and had, by force of numbers, excluded complainants, who were the regularly organized Mount Helm Baptist Church, from the use, rights, and possession of said property; that the new church, led by Jones, made defendants to the bill, were claiming the right to the Mount Helm Baptist Church and the parsonage, and aver that the rights of said defendants to said property were fictitious, shadowy, and a cloud on the title of complainants. The bill prays for an injunction against defendants, prohibiting them from interfering with complainants in the use of their property,

and prohibiting defendants from using the same to the exclusion of complainants, and asking that any claim of defendants to said property shall be canceled as a cloud on the title of complainants; that complainants be decreed the right to said property, be placed in possession of same, and that the defendants be perpetually enjoined from interfering with complainants in their use of said property. The defendant Jones and others answered the bill, admitting the organization of the Mount Helm Baptist Church as alleged, but denying that the conveyance was in trust, or that it carried any dedication of the lot for the use of the church; denied the dedication of the church irrevocable to worship according to the Baptist teachings, doctrines, tenets, etc.; denied that they had abandoned the faith of the Baptist Church. They admitted that the Mount Helm Baptist Church owned the property, but claim that they are the Mount Helm Baptist Church. They denied that they, or any other society with them, ever left the Mount Helm Baptist Church, or organized any other or different church. After the answer was filed, defendants moved the court to dissolve the injunction. On the hearing of the motion the court refused to dissolve the injunction, but modified it so that defendants were enjoined from the use of the property for a new church organization, organized or to be organized by them, other than the Mount Helm Baptist Church, from interfering with the complainants and others as members of Mount Helm Baptist Church in the use of the property for worship and all church purposes as members thereof, and from interfering or attempting to interfere with the title to said property as held by the Mount Helm Baptist Church until further otherwise ordered. By reason of the modification of the injunction, decree was rendered against complainants and the sureties on the injunction bond for damages. At the final hearing of the case the court dismissed the bill, and dissolved the injunction, from which final decree complainants appealed to the supreme court.

*Williamson, Wells & Croom,* for appellants.

We do not insist that the courts of the state shall exercise ecclesiastical jurisdiction. We do not ask the courts to settle any ecclesiastical or religious question; but we do insist that the civil courts have jurisdiction over the property rights of churches as they have over property rights of individuals. Baptist churches can own property, and the laws of the state protect them and all other churches in their property rights, on the same principles that property rights of persons are protected and guaranteed.

The question for the court to decide is simply this: Are the appellants or the appellees, the Mount Helm Baptist Church? The settlement of this question fixes, of course, the rights to the property involved in the suit.

The following propositions of law are sustained by the overwhelming weight of authority:

The minority members of a church acting in harmony with its ecclesiastical laws and adhering to its faith, constitute the church as against a majority which had departed from the faith. *Smith* v. *Pedigo,* 145 Ind., 392.

The members who adhere to the constitution and confession of faith, although constituting a small minority, are entitled to the church property where the majority by revolutionary action have adopted a new faith and refuse to submit longer to the organic law and faith of the association. *Bear* v. *Heasly,* 98 Mich., 279; *Mount Z. B. Church* v. *Webster,* 83 Ia., 138.

Ecclesiastical standing, not numbers, determine the title to and the right of control over property held for the use of a church. *Kreeker* v. *Shurley,* 163 Pa., 534; *Fuchs* v. *Meisil,* 102 Mich., 357; *Mount Z. B. Church* v. *W.,* 83 Ia., 138; *Smith* v. *Pedigo,* 145 Ind., 392.

For the purpose of settling titles to church property, courts may inquire into and determine the validity of an attempt to amend the constitution and change the confession of faith of the society, so as to ascertain whether those adhering to the old or

new constitution of faith constitute the church. *Nance* v. *Busby,* 91 Tenn., 317; *Schlichler* v. *Keiter,* 156 Pa., 119; *Smith* v. *Pedigo,* 145 Ind., 392; *Watson* v. *Jones,* 80 U. S., 13 Walle, 679; *McGinnis* v. *Watson,* 41 Pa., 9; *Win* v. *Gold,* 43 Pa., 244; *Lamb* v. *Cain,* 129 Ind., 410.

No principle is better settled than that property conveyed to trustees for the use of a church by its denominational name creates a trust for the promulgation of the tenets and doctrines of that denomination. *Hale* v. *Everett,* 53 N. H., 9; *Fer* v. *Vas.,* 31 Ill., 54; *Pres. Church* v. *Bourbon,* 10 Abb., N. C., 1; *Miller* v. *Gable,* 2 Denio, 492; *Smith* v. *Pedigo,* 145 Ind., 392.

The court will find the several propositions of law announced above and all the questions of law involved in this case elucidated and fully discussed in the following authorities: 2 Pattes on Corporations, 572; 69 Pa., 465; 24 Ohio St., 263; 4 Ia., 252; 27 Neb., 388; 79 Cal., 365; 96 Ia., 55; 82 N. S. (15 Walle), 131; 22 Neb., 375; 62 Ia., 567; 43 Pa. St., 244; 67 Pa. St., 138; 163 Pa., 534; 102 Mich., 357.

The evidence in this case shows that Jones and his faction, the defendants, have withdrawn from the Baptist denomination, have adopted a different name from "Baptist," and adhere to a different form of church government and worship, and have abandoned the faith, tenets, doctrines and practices from that adhered to and practiced by the Mount Helm Baptist Church, from its organization down to the present time, and which said church adhered to and practiced at the time the property in controversy was acquired.

*Alexander & Alexander,* for appellees.

In *Moseman* v. *Heitshousen,* 69 N. W., 957, it is laid down that when the rights of a faction of a church to control such property and records depends mainly on matters of religious doctrine, the courts will not interfere.

In 50 Neb., 420, it is held that civil courts will refuse to interfere where the rights of a faction of a church to control its

property or records depend mainly on matters of religious doctrine as to which the disputing factions entertain diverse views.

Question of church membership is purely ecclesiastical. *Waller* v. *Hoell,* 45 N. Y. Sup., 190.

Upon questions of doctrine, practice and jurisdiction within a church, the secular courts of Illinois have no authority to adjudicate.    154 Ill., 304.

Courts having no ecclesiastical jurisdiction will neither review nor revise proceedings or judgments of church tribunals which involve questions of church discipline only. *Powers* v. *Budy* (Neb.), 63 N. W., 476.

Each Baptist church is independent of all others, and the officers are elected and its affairs governed by the will of the majority.    The several churches are, however, organized into associations which are advisory on all questions of faith, doctrines and discipline.    But even though the proper association which embraced the church in dispute finds that the teachings of a certain preacher were contrary to Baptist doctrine, and a majority of the members and of the trustees of the local church adhere to the pastor's teaching, yet a minority of the church and of the trustees who submit to the findings of the association cannot in a legal action of ejectment recover possession of the church property. *Tarsin* v. *Bagby,* 138 Mo., 7.

Excommunicated members of a church whose names have by the valid action of a church been expunged from its roll of members cannot stand for and represent members of the church in an action to prevent the diversion of the church property. *Hance* v. *Busby,* 15 L. R. A., 801.

Excommunication by vote of a majority of the members voting at any conference of a purely congregational and independent church, although made without notice to the accused of the charges against him or opportunity to vindicate himself, and under an erroneous construction of the usages and practices of the church, is an act of the church which cannot be re-

viewed or interfered with by a civil court. *Nance* v. *Busby,* 15 L. R. A., 801.

If a society has established rules for the expulsion of members and proceeds according to them, the members can obtain no relief from the civil courts. *Grosvenor* v. *Society of Believers,* 118 Mass., 78.

The United States court cannot decide who ought to be members of the church, nor whether commounicants have been irregularly cut off. It must take the fact of excommunication as conclusive proof that the persons exscinded are not members. . . . In a congregational (in this case Baptist) church, the majority, if they adhere to the organization and doctrines of the church, represent the church. 15 Wall. (U. S.), 140; 38 Mon. (Ky.), 1253.

Where a congregation adopts certain books as the exponents of faith and doctrine, and there subsequently arise honest differences of opinion as to interpretation of the statements of such books, and the constitution is silent as to such matters and provides no mode of determining the differences, civil courts will hold that adherence to either party dissolves *ipso facto* a member's connection with the congregation, so that he ceases to become a member of the corporation it has formed, to hold the property and control it. 42 Minn., 504.

The mere decree of a church class in authorizing steps to be taken towards the dissolution of a church will not of itself work such dissolution where the decree is never executed and no such steps are ever taken, especially where the class reviews its action in the matter and pronounces it inoperative. *Reformed Dutch Ch.* v. *Harder,* 34 N. Y. S. R., 645; 58 Hun., 605.

Where there is a schism in a religious society, though the existence of the peculiar faith or doctrines of either branch may be incidentally involved in an inquiry relative to the rights of property, all that the court can do is to enforce the observance and execution of an ascertained trust. 53 N. H., 71.

A conveyance of lands in trust to a religious corporation to be kept as a place of divine worship will not prevent alienation of the land where the proceeds are devoted to the usages and purposes and kept under the same denominational discipline. 89 Penn. Ref. Ger. Ch. See L. R. A. reports; 13 L. R. A:, 198; 15 L. R. A., 801; 32 L. R. A., 92. .

Where a deed conveyed property simply to the trustees of the Church of Christ, Chicago, and there was no express declaration of trust therein or separately, held that the property belonged to the society or congregation of Christ Church in its corporate capacity, and not in trust for the benefit of the Protestant Episcopal Church as a religious denomination, nor subject to the control of any ecclesiastical judicatory. *Calkins* v. *Cheny,* 92 Ill., 463.

The action of a religious society in receiving or rejecting members is not subject to control by the courts. 58 N. H., 187.

A change in the corporate name does not interfere with the continuity or identity of the corporation so as to prevent its holding corporate property previously acquired. Am. & Eng. Enc. Law, 782, on subject Relig. Soc.

A mere resolution to secede from a religious society without any action by its higher authorities, does not deprive any member of membership. Am. & Eng. Enc. Law, 782, Relig. Soc.

Where a church is organized as a corporation under the laws of the state and has no ecclesiastical superior, the minority of its members cannot, after forming another organization, because the majority have abandoned the original articles of faith, obtain possession of the property. *First Baptist Church of Paris* v. *Fort,* 54 S. W., 892 (Texas, 1900); (citing *Bouldin* v. *Alexander,* 15 Wall., 131; *Cox* v. *Walker,* 26 Me., 504; *Shannon* v. *Frost,* 3 B. Mon., 481; *Hendrickson* v. *Shotwell,* 1 N. J. Eq., 577).

Where land was donated to a church organization under articles of faith, and having no ecclesiastical superior, and the church building erected thereon was paid for by subscription

from members and others, and there is no trust imposed on the property either by the donation or subscriptions, that it should be used for the propagation and support of such articles of faith, the courts will not imply a trust for the purposes of expelling from its use those who by regular succession and order constitute the church, though they have changed in some respects their articles of faith. *First Baptist Church of Paris* v. *Fort, Supra.*

If there be within an independent church congregation officers in whom are vested the powers of controlling its temporary affairs, those who adhere to the acknowledged organism by which the body is governed, are entitled to the property, and a minority which choose to separate themselves therefrom and refuse to recognize the authority of the governing body, can claim no rights in the church property from the fact that they once had been members thereof, though the religious tenets taught by the majority are not in accordance with the doctrines adopted at the time of the organization of the church. *Fort* v. *First Baptist Church of Paris,* 55 S. W., 402. See, also, *Brundage* v. *Deardorf,* 92 Fed., 214.

In the Smith-Pedigo case, 145 Ind., 385, so much relied on in the lower court, both factions of the Indiana church submitted their claims and differences to the general association. Naturally having referred the matter by agreement to an umpire, the court naturally, and mainly on that account, decided the case as it did. Furthermore, in that case the change of faith was by a majority. In this case there was no reference of the matter to any umpire. And, further, the change of faith, if the action of the church was a change of faith, was by unanimous vote. In *Harrison* v. *Hoyle,* 24 Ohio, both factions submitted their claims to the Ohio yearly meeting as umpire, or referee. Consequently these cases are not in point. There is no authority in the world which holds that a unanimous vote of a church can not do what it wants with its property if there be no trust involved. In the Mt. Zion case, *Church* v. *Whitmore,* 83 Iowa, 138, both sides by agreement left the settlement of their diffi-

culty to a counsel of Baptist ministers, which held one faction to be wrong, and recommended that the doctrine be taught no more in the said church. Thereupon, at a meeting representing the entire membership, the said action of the church was accepted. The court held that when one faction afterwards rejected their past agreement and action, they could not subsequently be heard in court.

In *Bear* v. *Heasly,* 98 Mich., 279, the church had previously adopted a resolution (p. 281) that the General Conference should be the highest judicial authority of the church. Naturally, having transferred their powers to the General Conference, when the conference decided, the losing side had to abide by it.

It seems rather humorous, when we see how hard Jones tried to get before the associations and conventions of his church, that the above cases should be brought forward, in which matters were placed before associations and conventions to prove appellant's claims in this case.

In *Krecher* v. *Shirey,* 163 Penn., 334, it is held that the title to the church property is in that faction which adheres to the doctrines as adopted and accepted by the body before schism took place. The church in this Pennsylvania case was not a democratic church anyway, as it had a bishop, etc. Moreover, the church property was conveyed to the officers of the church (incorporated) "in trust to be kept, used and maintained as a place of divine worship by the ministers and membership of the Evangelical Association of North America, with power to dispose of the same subject *to* the discipline, usage and ministerial appointment of said church or association as from time to time authorized and declared by the general conference of said association and annual conference in whose bounds the said premises are situated (p. 537).

In *Fuchs* v. *Neisel,* 102 Mich., the matter had to do with a Methodist Church, and not a Baptist. The General Church Discipline provided (p. 360) that "when land is conveyed for

use of any congregation of said denomination, said land shall be kept *in trust* to be used as a place of divine worship by the ministers and membership subject to church discipline."

*Nance* v. *Busby,* 91 Tenn., was decided on the ground of the trust. The syllabus distinctly states that the conveyance was "To them and their successors of the same faith and order, forever." Moreover, in this case, complainants' bill was *dismissed* by the supreme court.

In *Schlesler* v. *Keith,* 156 Penn., 119, the court will note the terms of the deed (p. 125 of the report). And we believe that the court will find all cases decided in favor of the minority are because of some trust in the title deed of the property in litigation.

There is no trust concerned in the Mount Helm deeds. As we have said before, complainants were excluded from the church and ceased to be church members. The Dees case and the Smith-Charles case, both decided by this court, leaving out of consideration other state decisions of our sister states, effectually determine the issue of this case; we have no hesitation in asserting that the court will affirm the decision of the chancellor below.

Argued orally by *C. M. Williamson,* for appellants, and by *Chalmers Alexander* and *C. H. Alexander,* for appellees.

Whitfield, C. J., delivered the opinion of the court.

This court exercises no ecclesiastical jurisdiction. It accepts what the highest ecclesiastical authority in each church promulgates as the faith and practice of that church; that authority, under Baptist polity, being each separate Baptist church. If we were called on in this case to say for ourselves what Baptist faith or creed is, we should decline to do so, for so to do would be to exercise ecclesiastical jurisdiction. This was a proposition settled in the case of *Smith* v. *Charles,* 24 So. Rep., 968, decided at last term. But the property rights of all churches are within

the protection of this court, as are the property rights of citizens of every class. There is no need here for any declaration as to what Baptist creed or faith is. The appellees have relieved us of all difficulty on that score. They have themselves, by their own voluntary act—that is to say, by their declaration solemnly made on the minutes of their church—declared: (1) That they repudiated the name "Baptist," and adopted in its stead the "Church of God"; (2) that they repudiated the name "Mount Helm," and adopted instead the name "Tabernacle of Christ," thus changing the designation of the church from "Mount Helm Baptist Church" to the "Church of God, Tabernacle of Christ"; (3) they have expressly repudiated all creeds and denominations as man-made devices; and then (4) they have proceeded to elect, after the schism in the church and the expulsion of the minority —some 160-odd persons—a new set of church trustees, and charged them with the duty of having the church property conveyed to the new organization, or to the trustees for the new organization, if that could be legally done. It is idle to say that a majority faction which has thus severed its connection with its old faith and organization in the most solemn form possible, first, by such declaration on its minutes, and, second, by reorganizing, in pursuance of that declaration, along the line of a new church, can any longer claim to be the church whose name, whose organization, and whose denominational status such majority faction have, both by words and acts, solemnly repudiated. That is the sole issue in this case, no question of ecclesiastical jurisdiction being involved. We have nothing to do with or say about the idea, however beautiful it may be, apparently entertained by appellees, that they can find the lost religious Atlantis sailing under this new flag, and establish one new church, disconnected wholly from all existing religious denominations, wherein universal harmony shall prevail. It is enough for us that the Baptist church as it exists to-day is one of the well-known religious denominations of the world, and that the appellees have, in the manner indicated, most emphatically and un-

mistakably repudiated it, and set up and organized a wholly new and distinct church of their own. We think that it is clear that the original donor of the property constituting the Mount Helm Baptist Church edifice and grounds donated it for use as a Baptist church, and more specifically the particular Baptist church known as the "Mount Helm Baptist Church"; and that its dedication to that use cannot be altered by those openly proclaiming that they are not Baptists, although they may constitute a majority in number of the old church. They do not claim as Baptists. They claim as the "Church of God, Tabernacle of Christ"—a new church, utterly distinct and independent; their effort to retain (when they "cast the matter out," as their minutes say) the mere name not being, as we think, at all determinative. They did not recall their fulmination against all denominations and creeds, nor undo their independent organization. The property is held in trust by the church for the purpose for which it was dedicated by the donor, and for that purpose alone.

In this view it is clear that the learned chancellor erred in his decree, which is reversed, and the injunction in the form it was as modified by the court below will be reinstated, and made perpetual, by a decree entered here.

*So ordered.*