LINTON, et al. *v.* FLOWERS, et al.

No. 40474 April 22, 1957 94 So. 2d 615

*R. C. Russell*, Magee; *O. O. Weathersby*, Raleigh, for appellants.

*McFarland & McFarland*, Bay Springs, for appellees.

McGEHEE, C. J.

The parties to this church controversy, composed of the appellant, Rev. A. H. Linton and Verner White, W. H. Womack and Carvin Ates, Trustees, filed their bill of complaint for injunctive relief against the appellees, Rev. Homer Flowers, and Aubrey Everett, Elmer Ates and Oliver Rankin, Trustees, were formerly members of the Antioch Methodist Protestant Church, located about three miles east of Magee, Mississippi, and the appellees are still members of that church. The Antioch Methodist Protestant Church in Simpson County and the Pleasant Grove Methodist Protestant Church in Covington County were members of the Magee Charge of the Methodist Protestant Church, and all members of the said two churches were until February 19, 1956, members of the Mississippi Methodist Protestant Annual Conference and the General Conference of the Methodist Protestant Church.

On January 24, 1956, the Rev. Austin Watson, President of the Mississippi Annual Conference, on an official visit to the Antioch Methodist Protestant Church near Magee, Mississippi, presented in skeleton form a resolution to the said church, for its acceptance or rejection, whereby it was proposed that the members of the said church should withdraw from the Mississippi Annual Conference and the General Conference of the Methodist Protestant Church and join a proposed newly organized Mississippi Annual Conference and General Conference of the Methodist Protestant Church. The resolution was later put into final form and was presented to the Antioch Methodist Protestant Church on February 19, 1956, at a called meeting of the church. On the evening of that day the resolution in final form was presented to the membership of the church, a great majority of whom were present, and where there was also present the appellant Rev. A. H. Linton and some visiting ministers, some of whom were not in accord with the action to be taken. As the meeting was drawing to a close, a goodly number of the members of the church filled the aisles and went forward and signed the resolution. It was later presented to other members of the church who were absent from that meeting, and with the result that a total of sixty-three out of the one hundred and one members of the church signed the resolution, declaring their intention to withdraw from the said conferences and to join the proposed new annual and general conferences of the church, which was to be organized on February 25, 1956.

The Rev. Austin Watson was then drawing his salary as President of the Mississippi Annual Conference. The schism in the Antioch Methodist Protestant Church, and among the ministers of other churches of the said conferences, arose out of the fact that they and some of the members of the churches that they were then serv-

ing, and composed of the said majority (approximately eighty percent of the church membership who attended upon its services) of the members of the Antioch Methodist Protestant Church near Magee, Mississippi, were in favor of the church accepting as a mode of baptism either immersion, sprinkling or pouring, notwithstanding this church under the Rules of Discipline had since 1944 accepted only sprinkling or pouring as the exclusive mode of baptism, and it was because of this schism that the appellant Rev. A. H. Linton and the majority of the membership of the Antioch Methodist Protestant Church had signified in writing their determined intention to withdraw from the said Mississippi Annual Conference and the General Conference of the Methodist Protestant Churches.

It seems that the Rev. Austin Watson, President of the Mississippi Annual Conference of the church was to be the president of the proposed newly organized general conference, and that the appellant Rev. Victor E. Coursey was to be the President of the new Mississippi Annual Conference. The result was that the names of these ministers and eighteen others who were aligned with them were dropped from the list of ministers of the old Mississippi Annual Conference and of the old General Conference.

Thereupon, the Mississippi Annual Conference, with the approval of the General Conference, designated the appellee Rev. Homer Flowers to become the pastor of the Antioch Methodist Protestant Church to fill the vacancy caused by the withdrawal of the appellant A. H. Linton from the said old conferences.

No charges were preferred against either of these two ministers for hearing, since the action proposed to be taken by the old conferences was not to expel them from the conferences, they having already withdrawn therefrom, or declared their intention not to

abide by the Rules of Discipline then in force and effect, declared by the latest edition of the Rules of Discipline adopted in 1952, and introduced upon the trial of this case. Their credentials as ministers of the old Mississippi Annual Conference and General Conference were withdrawn by the said conferences.

A great deal of confusion in the Antioch Methodist Protestant Church thereafter arose. At the time for worship on Sunday, the Rev. Homer Flowers appeared at the church, took his place behind the lectern, to preach at the said church. Thereupon, the appellant, the Rev. A. H. Linton also appeared to conduct the hour of worship. At the close of the Sunday School hour, Mrs. Mattie Everett turned the services for the preaching hour over to the appellee, Rev. Homer Flowers. They both undertook to preach at the same time, and the majority group, led by the Rev. A. H. Linton, elected the three appellant-trustees, and the minority group, which consisted of not more than twenty members, elected the appellee-trustees.

At the next Sunday preaching hour the same performance was undertaken by the two alleged pastors of the church. The result was that the sheriff of the county was sent for, and not knowing what else to do, he took a vote of the membership of the church as to whom they desired to hear preach. The result was that a large majority of the membership voted in favor of hearing the Rev. A. H. Linton. Thereupon, the sheriff told the Rev. Homer Flowers to take his seat and that he would see to it that he was allowed to preach when ''Brother Linton has finished'', but the Rev. Homer Flowers persisted in his effort to conduct the service, and with the result that the sheriff arrested him and took him to Mendenhall ''for disturbing religious worship.'' He was acquitted upon this charge.

Upon the filing of the bill for injunction herein, the bill of complaint was presented to a Member of this

Court who ordered a hearing before the circuit judge of the district as to whether or not a temporary injunction should be granted, returnable before the chancery court of the district. Then an agreement was entered into whereby the two respective groups stipulated and agreed that the majority group was to have the use and occupancy of the church building for two Sundays of the month and the minority for two Sundays of the month, pending the final hearing of the cause by the chancery court at the regular July 1956 term thereof. At the hearing in July before the chancellor a great deal of testimony was taken consisting of more than four hundred pages, including the introduction of the Constitution and Rules of Discipline of the old conferences for the use of the churches, and including a showing that the majority of the members of the Antioch Methodist Protestant Church had withdrawn from the two conferences, and also including the action of the conferences in dropping from their list of ministers a total of twenty names. After a full hearing of the matter and a consideration of both the oral and documentary evidence at the trial, the chancellor dissolved the temporary restraining order that had been issued against the minority group, and held that the trustees elected by them were the duly elected trustees with the right to control the use and occupancy of the church property. He granted all relief prayed for in the cross bill of the appellees and enjoined the majority group from interfering with the use and occupancy of the church property by the minority group, and enjoined any further disturbance by the majority group of the minority group in the use and occupancy of the church property as their place of worship. It is from this final decree that this appeal was prosecuted by the alleged pastor and trustees of the majority group.

The appellants rely upon Sections 5350 and 5351 of the Miss. Code of 1942, as amended by Chapter 343, Laws

of 1952, and the case of Ivey, et al. v. Geisler, et al., 213 Miss. 212, 56 So. 2d 501, a case involving primarily adverse possession of the church property in dispute, but we have carefully considered these statutes and this decision and have reached the conclusion that they are not controlling in the case at bar.

■■■ The appellees rely upon the case of Mount Helm Baptist Church, et al. v. Charles P. Jones, et al., 79 Miss. 488, 30 So. 714, and the case of Smith v. Charles, 24 So. 968 (Miss.), cited therein, in which the Court recognized that we have no ecclesiastical jurisdiction, and that we accept what the highest ecclesiastical authority in each church promulgates as the faith and practice of that church. However, the Court in that case did hold that the property rights of all churches are within the protection of the courts, as are the property rights of citizens of every class. In that case the the majority of the membership of the Mount Helm Baptist Church, by their own voluntary act had declared that they were repudiating the Baptist faith and were changing the name of the church from the "Mount Helm Baptist Church" to the "Church of God, Tabernacle of Christ." The opinion recites further that the appellees had proceeded to elect, after the schism in the church and the expulsion of the minority—some 160-odd persons—a new set of church trustees, and charged them with the duty of having the church property conveyed to the new organization or to the trustees for the new organization. The opinion went on to say that: "It is idle to say that a majority faction which has thus severed its connection with its old faith and organization in the most solemn form possible * * * can any longer claim to be the church whose name, whose organization, and whose denominational status such majority faction have, both by words and acts, solemnly repudiated. That is the sole issue in this case, no question of ecclesi-

astical jurisdiction being involved.'' It is true that in the case at bar the witnesses from the majority group in their testimony claimed that they were still members of the Antioch Methodist Protestant Church near Magee, Mississippi, and it is likewise true in the instant case that the majority group have not embraced an entirely new faith or organized an entirely new church by another name, ██ ██ but we think that the case of Baptist Church v. Jones, supra, is authority for the proposition that even though the group which withdraws from the conference of the church and joins a new church organization may constitute the majority of the members of the old church, the church property remains that of the church to which it was dedicated, and is to be held in trust by the church for the purpose for which it was dedicated, and for that purpose alone.

██ ██ There was testimony in the instant case, which the trial court was entitled to accept as true, that as long as the organization of the existing church has enough members left therein to fill the church offices, the church does not become extinct, and that a majority of the members of the old organization are without authority to withdraw the church from the old conferences and place it under the jurisdiction and authority of a new organization, whether under the old or a new name, contrary to the wishes of the minority who wish to continue the existing church under the faith and Rules of Discipline by which the church was formerly governed.

In the case of Reid, et al. v. Johnston, et al., 85 S. E. 2d 114, the Supreme Court of North Carolina held that: ''A majority of the membership of the North Rocky Mount Missionary Baptist Church may not, as against a faithful minority, divert the property of that church to another denomination, or to the support of doctrines, usages, customs and practices radically and fundamen-

tally opposed to the characteristic doctrines, usages, customs and practices of that particular church, recognized and accepted by both factions before the dissension, for in such an event the real identity of the church is no longer lodged with the majority group, but resides with the minority adhering to its fundamental faith, usages, customs and practices, before the dissension, who, though small in numbers, are entitled to hold and control the entire property of the church. Wheeless v. Barrett, 229 N. C. 282, 49 S. E. 2d 629; Dix v. Pruitt, 194 N. C. 64, 138 S. E. 415; Kerr v. Hicks, 154 N. C. 265, 70 S. E. 468, 33 L. R. A., N. S., 529; Highland View Baptist Church v. Walker, 259; Ala. 301, 66 So. 2d 122; Mt. Olive Primitive Baptist Church v. Patrick, 252 Ala. 672, 42 So. 2d 617, 20 A. L. R. 2d 417; Mitchell v. Church of Christ, 221 Ala. 315, 318, 128 So. 781, 783, 70 A. L. R. 71; Baptist City Mission Society v. People's Tabernacle Congregational Church, 64 Colo. 574, 174 P. 1118, 8 A. L. R. 102; Smith v. Pedigo, 145 Ind. 361, 33 N. E. 777, 19 L. R. A. 433; Id., 44 N. E. 363, 32 L. R. A. 838; Park v. Champlin, 96 Iowa 55, 64 N. W. 674, 31 L. R. A. 141; Franke v. Mann, 106 Wis. 118, 81 N. W. 1014, 48 L. R. A. 856; Hughes v. Grossman, 166 Kan. 325, 201 P. 2d 670; 45 Am. Jur., Religious Societies, Secs. 55 and 67; 76 C. J. S., Religious Societies, Sec. 71, pages 853-854; Annotation 8 A. L. R. p. 113; Annotation 70 A. L. R. p. 83."

To the same effect is the case of Bramlett, et al. v. Young, et al., 93 S. E. 2d 873, decided by the Supreme Court of South Carolina. In that case the majority of the membership in the Presbyterian Church seceded and disassociated themselves by their voluntary action and vote from any connection with the Presbytery and the Presbyterian Church in the United States, and the Court said, among other things, that: "There can be no Presbyterian Church in the United States without an affilia-

tion with a Presbytery. A Presbyterian Church can be organized only by authority of a Presbytery. A minister cannot be employed or called to serve a Presbyterian Church without the approval of the Presbytery, of which such church is a member * * * The minority group, who are the respondents herein, have submitted themselves to the judicatories of the Presbyterian Church of the United States, and have been recognized by such as a duly organized church. They thereby have the identity necessary to make of them the McCarter Presbyterian Church." Elsewhere in the opinion the Court said: "When a division occurs in a church congregation, which is always unfortunate, the question as to which faction is entitled to the church property is answered by determining which of the factions is the representative and successor to the church as it existed prior to the division or schism, and that is determined by which of the two factions adhere to or is sanctioned by the appropriate governing body of the denomination. It is a question of identity."

It is not for us to decide as a Court as to whether the mode of baptism for admission into a church should be immersion, sprinkling or pouring. We are at liberty to make that decision only as individuals. The fact remains that in the present instance the Methodist Protestant Church operates under a representative form of government, and to remain in that church one is bound by its constitution and rules of discipline which prescribe the mode of baptism to be sprinkling or pouring. A congregation of such a church must recognize as its duly constituted pastor the minister assigned to it by the conference. And although in the instant case there was testimony that the Antioch Methodist Protestant Church had the right to call its own pastor, it is found upon a consideration of all the testimony in this case **that the churches belonging to a Charge had the right**

to send a delegate to the conference who is privileged to use his influence with the conference to have the same pastor sent back to the church or someone else sent in his place to serve. But the final authority is vested in the conference as to what minister shall be designated to serve each church. In the instant case the Antioch Methodist Protestant Church would send the delegate one year and the Pleasant Grove Methodist Protestant Church would send the delegate the next year, and the custom was that this delegate was supposed to ascertain the wishes of the majority of the membership of the churches of the Charge as to whether the same or some other minister should be sent to serve the churches. In the case now before us the conference had the right to send these churches another pastor, and especially where the pastor then serving the church had withdrawn from the conference and declared his intention and purpose to join a proposed newly organized conference. The chancellor so held, █ and further held that the group of members who remained affiliating with the conference had the right to elect new trustees in whom the title of the church property was to be vested. The deed was to the original trustees "and their successors in office." The majority group in withdrawing from the annual and general conferences were without authority to elect the trustees of the church from which they had withdrawn.

The decree appealed from must therefore be affirmed.

Affirmed.

*Lee, Arrington, Ethridge* and *Gillespie*, JJ., concur.