263 So.2d 537 (1972)
Reverend H.D. SUSTAR, State Overseer for the Church of God in Mississippi, et al.
v.
David WILLIAMS et al.
No. 46633.
Supreme Court of Mississippi.
June 5, 1972.
Rehearing Denied July 3, 1972.
Satterfield, Shell, Williams & Buford, Swep S. Taylor, Jr., Jackson, for appellants.
Harlon H. Varnado, John H. Downey, Jackson, for appellees.
RODGERS, Presiding Justice.
This litigation involves that which is commonly known as a church dispute. The crux of this case centers around property ownership of a church building. This is what happened.
Certain citizens of Jackson, Mississippi, associated themselves into a religious association known as the Church of God. The original church organization is located at Cleveland, Tennessee. It is organized as a hierarchical church association. It is governed by a General Overseer and a General Assembly who appoint State Overseers and State Trustees of property. In short  it is a pre-Reformation feudalistic organization governed from the top, or apex, down.
The local citizens worked tirelessly to raise funds by giving parties, selling cokes and in other ways, until they raised sufficient funds to buy a building lot and to build a church. They raised many thousands of dollars to establish a place of worship. They then borrowed funds and erected a parsonage next to the church. *538 In the meantime, the governing authorities appointed one David Williams as an Exhorter. This is apparently an intervening station since he was later ordained as a licensed minister.
The affairs of the church moved smoothly until the State overseer, H.D. Sustar, decided to transfer the pastor, Brother Williams, to another church. The Overseer claimed that he had been told by someone on the telephone that unless he moved Brother Williams, he would be shot. The State Overseer ordered Brother Williams to move. He said he would get Brother Williams a good church, but Brother Williams refused to move. The local church members apparently felt, from the reading of their church law, that they could recommend a minister to the State Overseer. They wrote a letter to the General Overseer at Cleveland, Tennessee in which they proclaimed their loyalty to the "Church of God." The letter contained the statement, which was considered by the church officials as challenging their authority, as follows:
"... Therefore, it must be understood that the revocation of his license as a minister of the Church of God does not waver (sic) his position as our pastor. We intend to continue as a faithful Church, first of all to God, secondly as a Church of God...."
The letter was signed by practically all the members of the local Leavell Woods Church of God. In the meantime, the license of Mr. Williams as a minister of the Church of God had been revoked by the hierarchical authorities.
After the letter reached the General Overseer, the State Overseer appeared at the Leavell Woods Church on January 27, 1971 and read a proclamation to the assembled congregation in which he said that
"... [T]his church is, at this time, not a qualified member of the association of the Church of God, and is hereby dissolved and disbanded ... I am pursuant to the authority in me vested, declare (sic) this Church, as of now, disbanded and as a direct result, I am declaring all offices of this church are vacant. Any and all personal belongings of any and all persons, should be removed immediately from these premises... . I have sought guidance and counsel from the Lord and this is the only way I know of, or have found, to solve the dilemma in which I find this Church... ."
The congregation, however, did not leave and take their personal belongings; they continued to worship in the church for which they had worked so tirelessly. After the State Overseer had declared that the local trustees were no longer officers of the Church of God, he recognized the State Trustees as holders of the title to the Leavell Woods Church of God and he sought help from the Chancery Court of the First Judicial District of Hinds County, Mississippi. He alleged in his petition to the Court that James L. Franklin, Jr., Paul Barker and H.P. Ford are State Trustees of the Church of God and as such are holders of the title to the property of Leavell Woods Church of God located at 304 Cedar Lane, Jackson, Mississippi. A copy of a deed signed by a trustee is attached to the petition. No point was made as to whether or not the original deed limited the ownership of the property. We are, therefore, restricted to the evidence before us on the question of title. This deed is made to certain local trustees named in the deed. The habendum part of the deed is in the following language:
"TO HAVE AND TO HOLD unto the said Oscar King, Donald Sharp, and James Walker, as Trustees and constituting the Local Board of Trustees of the Church of God at Jackson, in Hinds County, Mississippi, and to their successors in trust, and assigns forever, and subject alone to the following limitations:
The said Local Board of Trustees shall hold title to, manage and control *539 the said real estate for the general use and benefit of the Church of God, having its general headquarters in Cleveland, Tennessee, and for the particular use and benefit of the local congregation of the said Church in Jackson, Mississippi
The said Local Board of Trustees shall have full right, power and authority to sell, exchange, transfer and convey said property, or to borrow money and pledge the said real estate for the repayment of the same, and to execute all necessary deeds, conveyances, etc. provided the proposition shall first be presented to a regular or called conference of the said local church, presided over by the State Overseer of the Church of God, or one whom he may appoint, and the project approved by two-thirds of all members of the said local congregation present and voting.
If the local congregation at the place above designated shall at any time cease to function, or exist, then said Trustees shall hold title to said real estate for the Church of God generally in the State where said real estate is located, and said Trustees shall convey the said real estate upon demand to the State Board of Trustees of the Church of God in said state, which said State Board shall be authorized to either use said real estate, or the proceeds derived from the sale of same (said State Board being authorized to sell and convey the said real estate at any time after title is vested in it), for the founding of another Church of God in the same state, or for the promotion of one already existing.
If at any time the Local Board of Trustees shall cease to exist or to perform its duties, then the State Overseer of the State in which said real estate is located, shall have the power to declare all offices on the said board vacant, and the State Board of Trustees of the Church of God for that state shall automatically then hold title.
The limitations set forth herein are those appearing in the Minutes of the 42nd General Assembly of the Church of God held at the Municipal Auditorium, Birmingham, Alabama, August 28-31, 1948."
The petition prays the court for a temporary and permanent injunction against David Williams, thr former pastor, and James Errington and James Walker, trustees of the former Leavell Woods Church of God, enjoining them from going upon the property described in the deed and enjoining David Williams from occupying the pulpit of the Leavell Woods Church of God or any Church of God in Mississippi and prays for general relief.
The First National Bank answered that it held no funds belonging to the Church of God.
The trustees answered by denying all of the facts stated in the original bill and especially denying that Jimmy D. Hankins was a local trustee of the Leavell Woods Church of God.
In the meantime, however, practically all of the adult members of the congregation of the Leavell Woods Church of God filed a petition asking to be permitted to intervene in the litigation as beneficiaries of a religious trust and the real parties of interest involved in the litigation of the title to the church property. They alleged that they are representing a majority of the beneficiaries of the religious trust; that at least sixty-six and two-thirds percent (66 2/3%) of the members have determined "that there exists a deep-seated and irreconcilable hostility" between themselves and the complainants; that under the authority of Section 1273-01, et seq., Mississippi Code 1942 Annotated, as added by Laws of 1960, Chapter 221, they are entitled to an order enjoining the State Overseer and the *540 State Trustees from exercising any control over the described church property. The church congregation was permitted by the court to intervene in the action and they filed their answer to the original bill stating, in substance, the allegations set forth in their motion, and again prayed for an injunction to prevent the State Overseer and State Trustees of the Church of God from interfering with the use and occupation of the church property. David Williams joined in an amended answer in which he denied that the court had jurisdiction to prevent him from holding himself out as a minister of the Church of God, since this did not involve church property rights.
The complainants in the original bill, the State Overseer and the State Trustees of the Church of God answered the affirmative allegations set out in the original and amended answers of the defendants and intervenors. They filed a demurrer as a part of their answer, and also filed a plea in bar to the defense of the intervenors in which they charge that Sections 1273-01 and 1273-02, Mississippi Code 1942 Annotated (Supp. 1971) are unconstitutional, inasmuch as the Church of God is a hierarchical church and the title to the property is vested in the trustees of the mother church rather than in the trustees of the local congregation. The Chancellor refused to sustain the plea in bar and was of the opinion that the two code sections here involved are constitutional. He, therefore, sustained the claim of the church members under these code sections and awarded the church property to the local trustees.
After a mature examination of the authorities, including the State and Federal Constitutions, we are constrained to hold that Sections 1273-01 and 1273-02, as shown in the 1971 Cumulative Supplement to the Mississippi Code 1942, are in violation of Article 3, Section 18, Mississippi Constitution of 1890, and the first amendment to the Constitution of the United States, and, therefore, are unconstitutional. The plea in bar filed by the complainants Reverend H.D. Sustar, State Overseer, and Reverend Paul Barker, Reverend James H. Franklin, Jr., and Reverend H.P. Ford, State Trustees, to the claim of the congregation of the local church should have been sustained. We base our conclusions upon the following considerations.
Long before the Federal Government began to draw the rights of the states into its centralized jurisdiction by the "process of absorption" this Court had a rich heritage in the protection of religious freedom.
In the case of Linton v. Flowers, 230 Miss. 838, 94 So.2d 615 (1957) this Court reviewed many cases and pointed out that the courts refuse to interpret ecclesiastical dogma and that the courts accept the highest ecclesiastical authority in each church as being the faith and practice of that church. However, we said that the courts will accept jurisdiction of church cases to determine property rights.
This Court in Linton, supra, quoted from the case of Bramlett v. Young, 229 S.C. 519, 538, 93 S.E.2d 873, 883 (1956) wherein it was said:
"`When a division occurs in a church congregation, which is always unfortunate, the question as to which faction is entitled to the church property is answered by determining which of the factions is the representative and successor to the church as it existed prior to the division or schism, and that is determined by which of the two factions adhere to or is sanctioned by the appropriate governing body of the denomination. It is a question of identity.'" 230 Miss. at 847, 94 So.2d at 619.
The Court also pointed out that the deed to the property was made to the original trustees "and their successors in office." This Court then held in the case before it that the property belonged to the original or mother church and not to those who wanted to break away or sever their relationship *541 with the mother church. The opinion in Linton, supra, was not based upon the fact that the mother church was a hierarchical church association, but the same result was reached as if this principle had been the basis of that opinion.
In the case of Presbyterian Church in United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969) decided by the United States Supreme Court, that Court pointed out that a civil court could not decide the ownership of church property where the issue was a church dispute based upon an interpretation of a church doctrine.
The Hull case, supra, arose over the right of the church property of two Eastern Heights Presbyterian Churches of Savannah, Georgia, and the Presbyterian Church of the United States. The congregations of the two Georgia churches voted to leave the mother church because of the change in certain doctrines of the mother church. The local churches filed suit to enjoin the mother church from trespassing on the church property. The mother church sought to have the court to dismiss the proceedings and ask for injunctive relief, upon the ground that the civil courts did not have the power to determine whether or not the mother church had changed its doctrines of faith and practice. The case was submitted to a jury and the lower court held that the mother church had, in fact, changed from its original faith. The Supreme Court of Georgia affirmed the judgment of the trial court.
On appeal to the Supreme Court of the United States that Court assumed jurisdiction on the theory that the Fourteenth Amendment "by absorption" made the First Amendment of the United States Constitution applicable to the States. The Court then agreed that civil courts could determine the ownership of church property where neutral principles of property rights were involved, but that civil courts could not determine whether or not churches had departed from their original doctrine, since this was prohibited by the First Amendment to the United States Constitution.
The opinion in Hull, supra, was based upon Watson v. Jones, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871); Kedroff v. St. Nicholas Cathedral, 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952); and Kreshik v. St. Nicholas Cathedral, 363 U.S. 190, 80 S.Ct. 1037, 4 L.Ed.2d 1140 (1960).
Several cases have been appealed to the United States Supreme Court since Hull, supra, that bear upon the issue in the instant case.
In the case of Maryland and Virginia Eldership of Churches of God v. Church of God at Sharpsburg, Inc., 393 U.S. 528, 89 S.Ct. 850, 21 L.Ed.2d 750 (1969) a majority of the members of those churches attempted to break away from the mother church and take the church property with them. The case went to the Supreme Court and that Court reversed the state court and directed that the case be determined in light of the Hull case, supra.
When the case returned to the Maryland court, the State Supreme Court based its new decision upon a state statute and again gave the property to the local churches. The opinion was based upon the theory of incorporation under state law and that the habendum language in the deed gave the title to the property to the local church. Maryland and Virginia Eldership of Churches of God v. Church of God at Sharpsburg, Inc., 254 Md. 162, 254 A.2d 162 (1969).
On a second appeal, the United States Supreme Court, in a per curiam opinion, permitted this decision to remain in effect and dismissed the appeal. Maryland and Virginia Eldership of Churches of God v. Church of God at Sharpsburg, Inc., 396 U.S. 367, 90 S.Ct. 499, 24 L.Ed.2d 582 (1970). Three of the Supreme Court Justices filed a concurring opinion in which they indicated certain guidelines intended *542 for the consideration by the state courts in church dispute cases. It is said that
"... [A] State may adopt any one of various approaches for settling church property disputes so long as it involves no consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith." 396 U.S. at 368, 90 S.Ct. 500, 24 L.Ed.2d 584.
Three approaches were outlined. The states could follow the theory of Watson v. Jones, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871). That is  the state could enforce the property decisions made by a majority of the members of the congregation where the church is a congregational polity for the purpose of ecclesiastical government. In the case of a hierarchical polity the matter should be subject to the decision of the highest authority which may rule on the property dispute in issue. If, however, the deed or other instrument by which the church obtained the property specifically or by "express terms" limits the ownership or use of the property, the deed or instrument may govern the ownership or use of the property. The concurring opinion also stated that the states could regulate church property on neutral principles of property law used in all property controversies, so long as the law does not interfere with religious doctrine.
The concurring opinion in the Maryland-Virginia case, supra, cited Northside Bible Church v. Goodson, D.C., 261 F. Supp. 99 (1966) (Aff. 387 F.2d 534 [5th Cir.1967]) as an example of a statute which was too broadly drawn. The Northside Bible Church case, supra, is of interest here because the Federal District Court held invalid an Alabama statute analogous though not exactly like the two Mississippi statutes we now have before us. The Alabama statute provided that the majority of church members could sever its ties with the parent church and take the church property without regard to the fact that the trust was made to the trustees of the mother church. The Court pointed out that under the Alabama law, sixty-five percent (65%) of the members of the local church were given power to nullify the trust clause in the deed, and thereby destroy the right of the church to appoint ministers to local churches in violation of its constitutional rights. It will be noted, however, that in the Goodson case, supra, the deed was made to the trustees of the Methodist Church and subject to the discipline of that church.
In another case from Alabama, First Methodist Church of Union Springs v. Scott, 284 Ala. 571, 226 So.2d 632 (1969), the deed to the church property was made to trustees of the Methodist Church South and the deed to the parsonage lot was made to "The Board of Trustees of the Union Springs Methodist Church." The church members, however, did not base their claim upon the wording of the habendum clause, but, rather, based their claim to the property upon the Alabama statute. The Alabama Supreme Court cited most of the previous state and federal cases involving the right to church property and held that the Alabama statute (Act. No. 79) violated the First Amendment guaranty of religious freedom of the United States Constitution.
A careful reading of Section 1273-01, Mississippi Code 1942 Annotated (Supp. 1971)[1] and Section 1273-02, Mississippi *543 Code 1942 Annotated (Supp. 1971)[2] reveals that the first section defines the majority of the beneficiaries to a trust as sixty-six and two-thirds percent (66 2/3%) of the adult local beneficiaries residing in the State of Mississippi. The second section permits this majority to exercise control over the administration of the trust when a "a deep-seated and irreconcilable hostility or tension * * * exists." In other words, the majority of the beneficiaries in a religious trust may take over and divest the mother church of the church property without regard to the wording of the habendum clause of the deed. Moreover, the Mississippi courts are required to determine the church doctrinal "deep-seated disagreement." In addition, Section 1273-02, supra, permits the courts to appoint trustees of the church property and the courts would be constantly subject to involvement in church disputes if required so to do.
We are constrained to hold that Sections 1273-01 and 1273-02, Mississippi Code 1942 Annotated (Supp. 1971) violate Article 3, Section 18, Mississippi Constitution of 1890, and the First Amendment to the Constitution of the United States.
The decree of the trial court is, therefore, reversed and the case remanded to the Chancery Court of the First Judicial District of Hinds County, Mississippi for further procedure in injunctive relief sought by complainants in their petition filed in that court.
Reversed and remanded.
All Justices concur.
*544 ROBERTSON, Justice (specially concurring):
I agree that Sections 1273-01 and 1273-02, Mississippi Code 1942 Annotated (Supp. 1971), are unconstitutional. Even though Section 1273-03 is not mentioned, I think that it is part and parcel of the overall plan advanced in §§ 1273-01 and 1273-02, and must inevitably fall with those two sections.
The local congregation of the Leavell Woods Church of God quarreled with the State Overseer and the National Church with headquarters in Cleveland, Tennessee, over the authority of the National Church to remove Reverend David Williams, the minister, and replace him with another minister. Over two-thirds of the members of the local church advised the General Overseer in writing that they still recognized Reverend David Williams as their minister. They wrote:
"Therefore, it must be understood that the revocation of his license as a minister of the Church of God does not waver his position as our pastor. We intend to continue as a faithful church, first of all to God, secondly as a Church of God. Our past records of faithful support speak for themselves. Bro. Williams is our pastor and will remain so now and as long as the Lord leads him to stay."
They did not charge the general church with departing from the tenets of the Faith; there was no quarrel over doctrines. Their sole quarrel was over a matter of internal administration.
The Church of God is a hierarchical church with the final authority vested in the General Overseer and a General Executive Committee in Cleveland, Tennessee. Each local church is a member of the General Church and is governed by it. The local Church of God is not autonomous; it does not have a congregational form of government, as does a Baptist church. Each prospective member before being received into the fellowship of the church must answer affirmatively the following question:
"Are you willing to abide by and subscribe to the discipline of the Church of God as outlined by the Scripture and set forth in the Minutes of the General Assembly?"
The Minutes of the General Assembly provide that the State Overseer appoint the local pastors. The local church may recommend but the final authority is in the State Overseer, backed up by the General Overseer.
The very deed, executed April 11, 1959, by which the Leavell Woods Church of God acquired the church property, provided:
"The said Local Board of Trustees shall hold title to, manage and control the said real estate for the general use and benefit of the Church of God, having its general headquarters in Cleveland, Tennessee, and for the particular use and benefit of the local congregation of the said church at Jackson, Mississippi.
......
"If at any time the Local Board of Trustees shall cease to exist or to perform its duties, then the State Overseer of the State in which said real estate is located, shall have the power to declare all offices on the said board vacant, and the State Board of Trustees of the Church of God for that state shall automatically then hold title.

"The limitations set forth herein are those appearing in the Minutes of the 42nd General Assembly of the Church of God held at the Municipal Auditorium, Birmingham, Alabama, August 28-31, 1948." (Emphasis added).
There was thus an express trust in favor of the General Church placed upon the property from the beginning.
The principal fault with Sections 1273-01 through 1273-03 is that these sections provide for a two-thirds majority of the local congregation to come into a civil court and secure a cancellation of a solemn covenant of a recorded deed. A similar *545 statute, known as "The Dumas Act", passed by the Alabama Legislature was declared unconstitutional by the Fifth Circuit Court of Appeals in Northside Bible Church, et al. v. Goodson, et al., 387 F.2d 534 (1967). That statute was also declared unconstitutional by the Supreme Court of Alabama in First Methodist Church of Union Springs, Alabama, et al. v. Scott, et al., 284 Ala. 571, 226 So.2d 632 (1969).
This case differs radically from Presbyterian Church in United States, et al. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, et al., 224 Ga. 61, 159 S.E.2d 690, first decided by the Supreme Court of Georgia in 1968. In that case two local congregations withdrew from the general church, charging abandonment by the general church of tenets of faith and practice existing when the local churches affiliated with it. There was abundant proof that the general church had departed from the tenets of faith and practice. The trial court so found and awarded the church property in each instance to the local congregation. The Supreme Court of Georgia affirmed. Upon appeal to the United States Supreme Court, that Court reversed and remanded, holding that:
"Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without `establishing' churches to which property is awarded. But First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern. Because of these hazards, the First Amendment enjoins the employment of organs of government for essentially religious purposes, School District of Township of Abington, Pa. v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); the Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine. Hence, States, religious organizations, and individuals must structure relationships involving church property so as not to require the civil courts to resolve ecclesiastical questions." 393 U.S. 440, at 449, 89 S.Ct. 601, at 606, 21 L.Ed.2d 658, at 665 (1969).
On remand, the Supreme Court of Georgia held that, there being no express or implied trust on the local churches' property in favor of the general church, that the provisions of the deeds by which the local churches acquired title would control, and that the legal title was conveyed to the local churches alone with no mention of the general church. Again the Supreme Court of Georgia affirmed the trial court, stating that:
"[T]here is no implied trust on the property in controversy. There was no other basis for a trust in favor of the general church, none being created by the deeds on the property, implied under the statutes of this State (Code §§ 108-106, 108-107), or required by the constitution of the general church. It will be remembered that the general church put no funds into this property.
"2. We are thus brought to a determination of where the legal title lies, which determination civil courts can make."

"As to this the facts shown by the record are not in dispute." (Emphasis added). Presbyterian Church in United States v. Eastern Heights Presbyterian Church, 225 Ga. 259, at 260, 167 S.E.2d 658, at 659 (1969).
This time the Supreme Court of the United States denied certiorari and the decision in favor of the local churches became *546 final. 396 U.S. 1041, 90 S.Ct. 680, 24 L.Ed.2d 685 (1970).
The case at bar is entirely different. There was an express trust in favor of the General Church of God, Cleveland, Tennessee, plainly set forth in the deed conveying title to the local trustees. Any law attempting to provide a scheme for the unilateral cancellation of a solemn contract is clearly unconstitutional for that reason alone.
We have complained a great deal, and rightly so in my opinion, about the Federal Courts taking over the administration of public schools in the minutest detail. Sections 1273-01 through 1273-03 would allow the chancery courts of Mississippi on the vote of a two-thirds majority of the local congregation to take over the administration and government of a local church. This law would violate that fundamental principle that we have held inviolate since the founding of this country, the principle of the separation of church and state.
GILLESPIE, C.J., and BRADY, INZER and SUGG, JJ., concur.
NOTES
[1] § 1273-01. Removal of trustees and others exercising authority over certain classes of trusts  definitions.

When used in this Act, the following words and phrases shall have the meanings ascribed to them hereby:
(a) Trusts. For the purpose of this Act, the term "Trust" shall be limited to express or implied trusts created for edducational, charitable or religious purposes where all or a substantial part of the corpus thereof shall have been contributed by the local beneficiaries (as hereinafter defined), or by their predecessor beneficiaries; and where said corpus shall consist of real or personal property situated within the State of Mississippi. This Act shall have no application to private trusts, either express or implied; to trusts administered by any public governmental authority; or to trusts for educational, charitable or religious purposes where all or a substantial portion of the corpus shall not have been contributed by the local beneficiaries thereof, or by their predecessor beneficiaries.
(b) Local beneficiaries. For purposes of this Act, the term "local beneficiaries" shall mean those persons residing within the State of Mississippi who shall have contributed (or whose predecessor beneficiaries shall have contributed) all or a substantial part of the corpus of the Trust, as above defined, and who shall locally, immediately, and directly enjoy the benefits of such Trust.
(c) Majority of beneficiaries. For purposes of this Act, the term "majority of beneficiaries" shall be defined as sixty-six and two-thirds per cent (66 2/3%) of the adult local beneficiaries residing within the State of Mississippi and enjoying locally and immediately and directly the benefits of such Trust.
[2] § 1273-02. Proceedings for removal of trustees  appointment of successor.

When a majority of the local beneficiaries of any educational, charitable or religious Trust (all as hereinabove defined) shall determine that there exists a deep-seated and irreconcilable hostility or tension between them and any or all of the trustees or others in authority exercising control over the administration of such Trust; then, and in such events, said majority of the local beneficiaries may file a bill of complaint in the Chancery Court of the county wherein any part of the corpus of said Trust is situated, setting forth the grounds for relief as stated herein and praying for a decree of the court discharging all existing trustees and all others in authority exercising control over the administration of such Trust (by whatever name designated) and for the appointment of other trustees who shall, upon their appointment and qualification in conformity with the terms of the decree of the Chancery Court, thereupon become vested with complete control and authority over the corpus of said Trust. All successor-trustees so appointed and qualified shall be citizens of the State of Mississippi, residing within the jurisdiction of the court appointing them, and who shall be a local beneficiary as defined in Sub-section (b) of Section 1 of this Act [§ 1269-21]. However, before entering a decree removing the existing trustees and all others in authority exercising control over the administration of such Trust and appointing successor-trustees, the Chancery Court shall first find affirmatively that the conditions set forth in this Section as alleged in the bill of complaint actually exist. The acting trustees and all others in authority with respect to said Trust shall be made parties defendant to the bill of complaint; shall be summoned in the manner provided by law; and shall be afforded every statutory right to plead, answer or demur to the bill of complaint exhibited against them, and to appear and be heard in opposition thereto.